MARY MCDONALD ET AL. V. THE INTERNATIONAL & GREAT
NORTHERN RAILWAY COMPANY.

No. 30.

| 86 | 1 |
|----|----|
| 87 | 123 |
| 86 | 1 |
| 89 | 679 |

**1. Charge—Right to Track—Negligence.**

The court charged the jury, in an action for damages for negligently causing the death of a person, that "the running by the defendant of trains upon its track was authorized by law, and the law did not impose any rule as to the rate of speed of such trains." The evident purpose of the instruction was that it was not negligence per se to run a train at any particular rate of speed, and in it was no error. Nor is the charge upon the weight of evidence ............................. 9

**2. Charges, Argumentative.**

It is not error to refuse an instruction merely argumentative upon the facts. See example. Also. it is held questionable if the facts in evidence authorized the hypothesis made the ground of the charge requested ................................................. 10

**3. Charge—Ringing Bell, etc.**

It conclusively appearing that the deceased knew of the approaching train, from which it follows that the negligence of the servants of the company who were operating the train in failing to ring the bell or blow the whistle, if they did fail in the performance of that duty, was not the cause of the accident, and it was proper that the jury should be so instructed ..................................................... 10

**4. Negligence—Charge Approved.**

The court charged: "Negligence is the failure to do what a reasonable and prudent person would ordinarily have done under the circumstances of the situation, or doing what such person under the existing circumstances would not have done." This does not exclude the idea that one may act upon appearances. The charge was proper........ 11

**5. Contributory Negligence.**

The doctrine that any degree of negligence which may be gross on part of a defendant will enable a plaintiff to recover notwithstanding his own negligence, is unsound in principle............................. 12

**6. Comparative Negligence—Case Criticised.**

The doctrine of comparative negligence recognized in the courts of Illinois, Georgia, and Tennessee is not followed. The great weight of authority is against it. Railway v. Rushing, 69 Texas, 317, criticised.. 12

**7. Intentional Injury.**

That contributory negligence is no defense to an injury intentionally inflicted, is clear .................................................... 14

Vol. LXXXVI. Sup.—1

**8. Charge—Gross Negligence—Contributory Negligence.**
  See facts where it is held proper to instruct the jury, "that the plaintiffs
  could not recover if deceased was guilty of negligence contributing to
  the accident, although the company's servants were guilty of gross
  negligence." Nor was it error to refuse the instruction, that if the
  servants were guilty of gross negligence in causing the death, the de-
  fendant was liable, without reference to the acts of the deceased.... 11, 14
**9. Ground for Writ of Error—Conflicting Decisions.**
  The decision in this case by the Court of Civil Appeals upon the subject
  of contributory negligence as a defense, is in conflict with decision by
  court in First District. Railway v. Brown, 2 Texas Civ. App., 281.
  From this fact the jurisdiction of the Supreme Court in error arises..  14

Error to Court of Civil Appeals for Third District, in an appeal from Williamson.

Chief Justice Fisher and Associate Justice Key having recused themselves, Hons. J. J. Falk and L. H. Brown were appointed special justices in the case in the Court of Civil Appeals. The opinion of the court was delivered by Justice Falk.

*S. R. Fisher*, for plaintiff in error.—1. Subject to the well recognized rule, that a railroad company must, at all times and places, and especially in the night-time, and at a place where travellers on the highway are likely to be, exercise ordinary care and vigilance in running its trains to avoid injury to others, it has the right, in the absence of statutory or municipal regulation prescribing the rate of speed, to determine the rate at which its trains may be run. This, in effect, the court told the jury. Railway v. Graves, 59 Texas, 333; Railway v. Kutac, 72 Texas, 643; Warner v. Railway, 44 N. Y., 465; Telfer v. Railway, 30 N. J. Law, 188; Railway v. Lee, 68 Ill., 576; 80 Ill., 88; 67 Me., 100; 17 Atl. Rep., 137.

2. The evidence, without conflict, conclusively establishing that Dr. McDonald, the deceased, with full knowledge of the approach of the train, stepped upon the track immediately in front of the engine, and that but for such act on his part he would not have been hurt, it is entirely immaterial whether the train was running at a high or low rate of speed, or whether the employes of the defendant were guilty of negligence or not; for the injury to the deceased resulted directly and proximately from his own negligent act, and not from any act or acts of the employes of the defendant. That they may have been guilty of negligence is not important, if the act of the deceased occasioned or produced the injuries inflicted upon him. Railway v. Garcia, 75 Texas, 591; Railway v. Bracken, 59 Texas, 74; Railway v. Graves, 59 Texas, 331; Railway v. Ryon, 70 Texas, 56; Hoover v. Railway, 61 Texas, 505, 506; Railway v. Kutac, 72 Texas, 643; Railway v. Houston, 95 U. S., 697; Improvement Co. v. Stead, 95 U. S., 161; Schofield v. Railway, 114 U. S., 615; Aiken v. Railway, 120

Pa. St., 380; Railway v. Webb, 8 So. Rep., 518, 522; Cadwallader v. Railway, 27 N. E. Rep., 161; Young v. Railway, 107 N. Y., 500; Greenwood v. Railway, 124 Pa. St., 572; Railway v. Slattery, L. R. 3 App. Cases, 1155; Railway v. Webb, 8 So. Rep., 523; Woodward v. Railway, 106 N. Y., 369; 11 Am. St. Rep., 778, note 786.

3. The evidence disclosing, without conflict, that the deceased knew of the approach of the train before he proceeded from Carpenter's store in the direction of the depot, and that the headlight of the approaching engine enveloped him in light—behind, in front, and on both sides—it is wholly immaterial whether the bell was rung or the whistle sounded, as the purpose of sounding the whistle or ringing the bell could only be to advise or warn deceased of the approach of the train in time to enable him to protect himself from danger if upon the track. Deceased having voluntarily put himself in the path of a known and apparent peril, can not complain of.negligence which in nowise contributed to his hurt. If he miscalculated his ability to cross the track, in front of a train which he knew was approaching, and failed, the consequences of his experiment and mistake can not be visited upon the defendant. Hoover v. Railway, 61 Texas, 505, 506; Railway v. Barfield, 3 S. W. Rep., 665; Railway v. Ryon, 70 Texas, 56; Railway v. Smith, 52 Texas, 183; Railway v. Bracken, 59 Texas, 73; Railway v. Graves, 59 Texas, 331; Railway v. Richards, 59 Texas, 375; 70 Texas, 583; Railway v. Houston, 95 U. S., 701; Improvement Co. v. Stead, 95 U. S., 161; Schofield v. Railway, 114 U. S., 615; Railway v. Webb, 8 So. Rep., 518, 522; Cadwallader v. Railway, 27 N. E. Rep., 161; Aiken v. Railway, 120 Pa. St., 380; 25 Mich., 274, 302; 47 Mich., 407, 408; Durbin v. Railway, 17 Ore., 5; Salter v. Railway, 75 N. Y., 273; 105 Mass., 79.

*A. S. Fisher* and *John C. Townes*, for defendant in error. — 1. The court erred in the third paragraph of its charge, in stating the law to be as follows: " The running by defendant of trains upon its track was authorized by the law, and the law did not impose any rule as to the rate of speed of such trains." In this, that while there is no statutory regulation of the rate of speed at which trains may be run, the law does require that parties operating trains shall at all times have the same under their control and government; and especially is this so when crossing public roads and thoroughfares, and entering and going through towns and villages and approaching the depots of the road and other public places to which the people are invited by the railroad company. Railway v. Dunbearg, 22 N. E. Rep., 15; Guggenheim v. Railway, 33 N. W. Rep., 166; Ballinger v. Railway, 31 N. W. Rep., 857; Howard v. Railway, 20 N. W. Rep., 93; Winstanley v. Railway, 39 N. W. Rep., 856.

2. The court erred in refusing special instruction asked by the plaintiff, to the effect, that if the jury found that it was the duty of the parties

operating the train to slow the speed of said train as it approached the point at which Dr. McDonald was killed, then Dr. McDonald had a right to believe that they would discharge said duty and slow up said train, and to act on such belief, unless from the conduct of the parties at the time it was manifest to him that such was not their purpose. Loucks v. Railway, 18 N. W. Rep., 651; Deer. on Neg., sec. 16, and cases cited; Thomp. on Neg., 1172; Shearm. & Redf. on Neg., sec. 31; Newson v. Railway, 29 N. Y., 383; Snyder v. Railway, 11 W. Va., 14; Railway v. Ward, 4 Colo., 30; Morrissey v. Ferry Co., 47 Mo., 571; Buesching v. Gas Light Co., 73 Mo., 219; Stepp v. Railway, 85 Mo., 229; Petty v. Railway, 88 Mo., 320; O'Connor v. Railway, 7 S. W. Rep., 107.

3. Where the defendant has injured the plaintiff by his gross negligence, it is no defense to show that the plaintiff was also guilty of negligence contributing to his injury. In such cases the principle of contributory negligence does not apply. Railway v. Rushing, 69 Texas, 317; Bottleshield v. Humphrey, 38 N. W. Rep., 586; Kennedy v. Railway, 16 Pac. Rep., 211; Rodon v. Railway, 24 N. E. Rep., 425; Railway v. Godfrey, 71 Ill., 507; Railway v. Huntington, 83 Ill., 510; Blanchard v. Railway, 126 Ill., 416; Meeks v. Railway, 36 Cal., 516; Railway v. Newbent, 62 Md., 398; Isbel v. Railway, 60 Mo., 475; Green v. Railway, 11 Hun, 333; Kenyon v. Railway, 5 Hun, 479; Railway v. Holmes, 5 Colo., 197; Railway v. Cromer, 4 Colo., 524; Wood's Ry. Law, 1253, 1258; Deer. on Neg., secs. 29, 31, and notes; Smith's Whit. on Neg.

GAINES, Associate Justice.—This case was before this court upon a former appeal, and is reported in 75 Texas, 47. Upon the last trial there was a verdict and judgment for the defendant, the International & Great Northern Railway Company. The suit was brought by the widow and children of one Dr. McDonald, to recover of the defendant corporation damages for his death. He was alleged to have been killed by a train of the defendant, through the gross negligence of its servants who were operating it.

The substance of the testimony, in so far as it bears upon the questions involved in the appeal, is stated as follows in the brief of appellant's counsel, as filed in the Court of Civil Appeals:

"Dr. McDonald, the husband of Mrs. Mary McDonald, and father of the other plaintiffs, resided at Round Rock. Hutto is a station on the International & Great Northern road some ten or twelve miles east from Round Rock, having, June 30, 1886, a few hundred inhabitants. The station house and ticket office was on the north side of the main track, between it and a switch or side track on north side of the building. The business portion of the village was south of the railway and east of the station house, and the residence portion mostly all on the north side of the track. Carpenter's store is some 260 yards east of the station house

and about 40 yards south of the track.  There were four public roads crossing the railway track within a distance of 692 yards east of the depot, the nearest being, on its nearest side, about 20 feet from the east end of the platform, and the furthest about 2076 feet east from the depot.

"There was a street running parallel with the track and south of it between the company's right of way and the business houses, and all between these houses and the track was open.  The country for many miles in every direction is open prairie.  From Carpenter's store to the depot, the usually travelled way leads from his store door in a northerly direction nearly to the track, then almost parallel with the track, until almost to the end of the depot platform, which was just south of and extending a little east of the depot building, where said way crossed the track.  This crossing at the depot was the one used by parties in loading and unloading on the platform, and by the public generally having occasion to go from the business part of town to the depot.

"On the morning of June 30, 1886, Dr. McDonald had been called to Hutto to see a patient.  His purpose was to return to Round Rock that night.  The schedule time for the south or west bound passenger train at Hutto was then between 4 and 5 o'clock p. m.; at that hour the doctor was at the station ready to embark, but the train did not come in, and he was told by the station agent that it was about three or four hours late. He procured his ticket.  As the train would not be along till late, the doctor went up to Mr. Carpenter's house and took supper, and as that gentleman was going off on the same train, the doctor went with him after supper to his store to await the arrival of the train.  Night came on.  The freight trains uniformly blew or whistled for this station at a point near the stock guard east from the station house, and passenger trains between this stock guard and the bridge at a point from 300 to 400 yards nearer the depot than the place where freight trains were accustomed to whistle. Headlights on trains approaching at night from the east could be seen several miles.  At about 8 o'clock (Carpenter and McDonald still being at Carpenter's store), Carpenter looked out and saw a headlight of a train approaching from the east, a mile and a half or two miles distant.  He watched it until it passed the point where freights were accustomed to whistle; it passed without any signal; he concluded it was the belated passenger, and so informed Dr. McDonald.  Dr. McDonald was deaf.

"Carpenter and the doctor started from the store to go to the depot. Upon reaching the gallery of his store, Carpenter went back to be sure about the lights and the fastening of his store.  When he again came to the front the doctor was some distance on his way to the depot.  The train passed the usual signal point for freights, and again failed to blow the whistle.  Carpenter, from his position, saw that it was a freight. Dr. McDonald continued his way to the depot, by just what route is left uncertain, some testimony tending to show that he was in the road just

south of and parallel to the track, and some that he was not in the road, but in the space between it and the track.   Passenger trains were in the habit of always stopping at the depot, and almost always slackened their speed east of and before reaching same, to enable them to stop just opposite.   Freight trains almost invariably did the same thing.   A large number of witnesses swear that no whistle was blown or bell rung until the train had reached or passed the depot.   The brakeman and conductor state that they do not remember any signals prior to the whistle for brakes, just after the doctor was hurt.   The fireman and engineer state that the whistle blew about a half a mile east of the depot, and the bell rang for some distance before Dr. McDonald was struck.   The train was going, at the time Dr. McDonald was struck, at a speed estimated at its slowest rate at twelve miles and the highest rate at thirty-five miles an hour.   It did not slow up or lessen its speed at all until the doctor was hit.   Neither the engineer nor conductor nor brakeman saw the doctor before he was struck.

" The fireman gives the occurrence as follows:   'All the facts and circumstances, as near as I can remember, concerning the accident, are as follows:   We were passing through Hutto; I saw a man approaching the railroad track from the south side; he was within twenty-five or thirty feet of said track, and running quite fast toward the depot; we were then about 150 feet from the depot and about 100 feet from where he was going to cross the track; when I first saw him I called to him to look out; the engine bell was then ringing; and when we were within about fifty or sixty feet of said depot building he stepped on the track immediately in front of the engine, and it struck him and threw him to the south side of the track.   At the time Dr. McDonald was struck I think the train was moving at the rate of about eighteen miles an hour.   The locomotive whistle was blown about one-third or one-half mile before we reached the depot building, and the bell was rung about 250 or 300 yards before we reached the station.   I saw Dr. McDonald approaching the railroad track from the south; he was about twenty-five or thirty feet from the track when I first saw him, and he was then about fifty or sixty feet from the engine, and coming somewhat with the train toward the track.   He was then running pretty fast, and I called to him to look out, and continued ringing the bell.   Nothing was done by the engineer to stop the train until after the doctor was struck, and I have said what I as fireman did to prevent the accident.   As I saw Dr. McDonald approaching the track, nothing could have been done to prevent the train from striking him, as there was not time, and the engineer knew nothing of the man coming until after the engine struck him.   The headlight of the train was burning.'

" One other witness saw Dr. McDonald at the time of the injury.   He details the fact as follows:   'At the time he was hurt I was sitting on the

gallery of Carney's drug store.   Dr. McDonald was going from Carpenter's store toward the depot, and moving in a fast run from the direction of Carpenter's store in order to get to the depot on the opposite side of the railroad.   At the time the freight train was approaching at a rapid speed from the north, and just as Dr. McDonald stepped on the railroad the locomotive struck him and knocked him off the track about ten feet to the left.   I saw the locomotive when it struck him, and went immediately to him.   The train was moving at the rate of about thirty miles an hour.   The whistle did not blow and the bell did not ring before the train reached the depot.   After the train passed the depot twenty or thirty steps the bell rang and the whistle blew down brakes.   Upon being informed that the train had struck a man, the engineer signalled for brakes and reversed his engine and did all he could to stop the train.   The train was composed of the engine, tender, and sixteen or eighteen cars.   The train did not stop until opposite the residence of Judge Goodman, about 2600 feet from where Dr. McDonald was struck.   Dr. McDonald's body was found on the south side of the track, about forty-five or fifty feet east of the depot platform, and about twelve feet from the track, with his feet toward the track and his head down toward the embankment.' ''

The testimony also showed, that Hutto was a town with about five business houses, and a population varying in number from 150 to 200.

The charge of the court, in so far as it bears upon the question involved upon the appeal, is as follows:

" 3.  The running by defendant of trains upon its track was authorized by law, and the law did not impose any rule as to the rate of speed of such trains.   The defendant was entitled to its track for its trains to run upon, and its servants and agents in charge of a running train had the right to act upon the presumption that the right of way for trains would be respected by persons approaching the track.   This, however, would not excuse the running upon and over a person on the track.   It was the duty of the servants and agents of defendant in charge of a running train on its track at all times, and especially in passing through towns or villages, and in approaching crossing places on its track where people were accustomed to pass, to keep a lookout, and if a person was seen upon the track and in danger, to check up or halt the train if it could be done by the exercise of ordinary care and by the use of ordinary means, to avoid inflicting injury upon such person.

" 4.  It was the duty of the deceased, Alexander McDonald, in approaching defendant's track at a crossing or at any other place upon the track, to exercise reasonable care for his own safety, and to look out and use the senses of which he was capable to ascertain whether or not there was danger from the approaching train, before attempting to cross the track.

" 5.  It was the duty of the servants and agents of defendant in charge of a running train on its track, on approaching a crossing upon the track,

to ring the bell or blow the whistle to indicate the approach of the train. The use of these signals is prescribed for the safety of those in the neighborhood of approaching trains; but the failure to perform the duty of. ringing the bell or blowing the whistle would not relieve the person in danger from the duty of using his senses to ascertain the presence of the approaching train, and if such person was aware of the presence of the train, the failure of the servants and agents of defendant to ring the bell or blow the whistle would be immaterial.

" 6. Negligence is the failure to do what a reasonable and prudent person would ordinarily have done under the circumstances of the situaation, or doing what such person under the existing circumstances would not have done. The duty is dictated and measured by the exigencies of the occasion.

" 7. Gross negligence is that entire want of care which would raise a presumption of a conscious indifference to consequences, and the conduct of the servants and agents of defendant can not be considered gross negligence unless evidenced by an entire failure on their part to exercise care, or by the exercise of so slight a degree of care on their part as to justify the belief that they were indifferent to the interest and welfare of others.

" 8. Contributory negligence is the want of reasonable care on the part of the person injured which concurs with the negligence of the defendant, its servants, and agents in causing the injury.

" 9. If the jury find from the evidence that on the 30th day of June, A. D. 1886, at Hutto, in the county of Williamson. in the State of Texas, said Alexander McDonald, while not in fault or guilty of negligence, was run over and injured by a train upon the railway of defendant, run by its servants and agents, such servants and agents at the time being guilty of gross negligence as defined in this charge, and that said Alexander McDonald was thereby killed, and plaintiffs are the widow and children of the said Alexander McDonald, deceased, then the jury will find for the plaintiffs as *actual* damages such amount as the said Alexander McDonald, deceased, would probably have earned by his intellectual and physical labor during the probable residue of his life if he had not been killed, which would have gone for the benefit of said widow and children, taking into consideration his age, ability, and disposition to labor, and his habits of living and expenditure; and the jury will by their verdict apportion the amount found by them among the plaintiffs, giving to the *widow* and to each of the children such share as the jury shall find by their verdict.

" 10. If the jury find from the evidence that at the time and place charged, the said Alexander McDonald was killed by a train upon the track of defendant by the gross negligence of the servants and agents of the defendant, and further find from the evidence that the said Alexander

McDonald, at and immediately before the injury, was himself guilty of negligence, and failed to use the care for his safety which his situation and circumstances reasonably required, and that his own want of care contributed to his death, then the jury will find for the defendant.''

*Opinion.*—It is first complained, that the court erred in the third paragraph of the charge, in so far as the jury were instructed, that '' the running by defendant of trains upon its track was authorized by law, and the law did not impose any rule as to the rate of speed of such trains.'' It is not claimed that there was any statute or ordinance regulating the speed of trains at the place of the accident; but it is insisted, in substance, that in particular localities circumstances may demand that the trains should be run with such care and circumspection and at such rate of speed as not to endanger the lives of persons crossing the track of the railroad; and that when these circumstances exist, the law imperatively requires that the rule should be observed. The evident purpose of the instruction was to tell the jury that it was not negligence per se to run a train at any particular rate of speed, and this was doubtless correct. The statute does impose the duty of ringing a bell or blowing a whistle when approaching a crossing, but it does not require that the speed of the train shall be diminished.

The charge does not instruct the jury that it might not be negligent to run a train rapidly under any state of circumstances, and does not preclude their finding that the rate of speed may not have been negligent under the facts of this case. There may be an act of negligence which is lawful in itself, but which becomes unlawful by reason of the circumstances attending it. Whatever we may do must be done with reasonable circumspection, so as to avoid doing an injury to another, either in his person or his property. We think, therefore, that it is neither incorrect nor, in a proper case, misleading to instruct a jury that an act which is not forbidden by law is not an act of negligence in itself, provided they be left to determine whether the circumstances are such as to make it negligent in fact. If an instruction to the effect that the jury should decide whether the running of the trains at a rapid rate of speed was, under the circumstances of this case, negligent or not had been desired, it should have been requested. A mere failure to give a proper instruction is not reversible error.

It is also complained that the instruction is upon the weight of the evidence, and is therefore erroneous. But we think the charge is not upon the weight of the evidence, and that the qualifications contained in the subsequent sentences in the same paragraph gave the jury the correct rule of law which governed the case. Taken together, the charge means that the train had the right of way, but that it was the duty of the train men to keep a lookout for persons on the track, and to take steps to avoid injuring them if discovered.

In this same connection, it is insisted that the court erred in refusing the following special instruction, requested on behalf of the plaintiffs:

"If from all the evidence in the case you believe that it was the duty of the parties operating the train referred to in plaintiffs' petition to slow up the speed of the said train as it approached the point at which Dr. McDonald was killed, then, in considering the question of contributory negligence on the part of Dr. McDonald, you are instructed, that Dr. McDonald had a right to believe that the train would be slowed up, and to act upon such belief, unless from the conduct of such employes or servants it was apparent to him that the speed of the train would not be slackened."

This may have been proper as an argument to the jury, but it was not proper to be given as an instruction by the court. It is doubtful whether there was any sufficient evidence to authorize the jury to find that it was the duty of those in charge of the train to diminish its speed in passing the depot. It was a through train. The road at the place of the accident was straight and comparatively level, and the depot and town were in an open prairie country. The town of Hutto was a mere hamlet, and it was night, when few people were passing. The headlight was burning brightly. Did Dr. McDonald believe the train would slacken its pace? It had not done so when he stepped upon the track but a few feet in front of the engine; and the result would then have been the same, whether any attempt had been made to stop the train or not. The instruction seems to us a mere argumentative suggestion, well calculated to mislead the jury.

The third assignment of error is as follows: "The court erred in the fifth paragraph of its charge with reference to the duty of ringing bells and blowing whistles, because the same is on the weight of evidence, and because it instructs the jury, that if Dr. McDonald knew of the approach of the train, it was immaterial whether the bell had rung or the whistle blown, thus withdrawing from their consideration the failure to blow the whistle at the usual place for freight trains to give the signal, and the consequent deception upon the part of Dr. McDonald as to the kind and identity of the approaching train, which was a very material matter to be considered in determining his conduct, and whether he was guilty of contributory negligence."

Dr. McDonald, as the evidence conclusively shows, knew that the train was approaching. It follows that the negligence of the servants of the company who were operating the train to ring the bell or blow the whistle, if they did fail in the performance of that duty, was not the cause of the accident; and it was proper that the jury should be so instructed. It is evident that the charge was not intended to affect, and did not affect, the question whether the failure to blow at the usual place for freight trains misled Dr. McDonald as to the character of the train. If a charge was desired upon that particular question, it should have been requested. It

may be gravely doubted whether there was any evidence to justify such an instruction.    Whether in any event a charge upon that point should have been given, we need express no opinion.

The sixth paragraph of the charge is also complained of, for the reason, as is insisted, " that it makes the question of negligence or not depend upon what a reasonable and prudent person would have done or would not have done under the circumstances of the situation, as these circumstances were shown at the trial to have in fact existed at the time; whereas, in determining Dr. McDonald's conduct, the true rule was the facts and circumstances as they existed, or he had been led by the acts and omissions of the defendant and its employes to believe they existed."

The charge is not subject to the construction which is placed upon it in the assignment.    It clearly expresses a plain proposition of law.    The words, " Negligence is the failure to do what a reasonable and prudent person would ordinarily have done under the circumstances of the situation, or doing what such person under the existing circumstances would not have done," do not exclude the idea that one may not act upon appearances.    Facts which would lead a prudent man to believe in the existence of other facts which do not really exist are as much circumstances of the particular case as the real facts which are present to his mind.

It is also contended on behalf of appellants, the court erred in charging the jury, that the plaintiffs could not recover if Dr. McDonald was guilty of negligence contributory to the accident, although the company's servants were guilty of gross negligence.    Moreover, three special charges, presenting different phases of the doctrine insisted upon, were requested by the plaintiffs, and were refused by the court.    Their refusal is also assigned as error.    One was to the effect, that if the servants of the defendant were guilty of gross negligence which was the proximate cause of Dr. McDonald's death, they would return a verdict for the plaintiffs, without reference to his negligence.    Another was, in substance, that if the company's servants were guilty of gross negligence causing the death, then the negligence of deceased would not defeat a recovery, unless it was also gross.    The other was to the effect, that slight negligence on Dr. McDonald's part would not defeat a recovery, provided the negligence of the train men was gross.

In reference to the third special instruction requested on behalf of plaintiffs, it is to be remarked, that the jury had been charged to find for the defendant in the event they found that Dr. McDonald was guilty of ordinary negligence, although the negligence of the company's servants was gross.    They were not warranted by the instructions in finding for the defendant on account of slight negligence on part of the deceased, provided the evidence otherwise justified a recovery by the plaintiffs. Therefore the third special instruction was unnecessary, and it was not error to refuse it.

The question, then, is whether the ordinary negligence of the plaintiff will defeat a recovery, when the negligence of the defendant contributing to the injury is gross. In Railway v. Garcia, 75 Texas, 591, it is said: "The effect of contributory negligence on plaintiffs' right to recover has been recognized in all cases passed upon by this court in which it was involved, and the rule fixing liability or denying it on the basis of comparative negligence has been condemned." But it seems to us, that the doctrine here invoked on behalf of the plaintiffs is the rule of comparative negligence in its simplest form. That rule is defined by Shearman & Redfield as follows: "The true rule of comparative negligence must be, that if the defendant has been guilty of gross negligence, and the plaintiff guilty only of such ordinary negligence as, when compared with the negligence of the defendant, might be called slight, though not slight when considered by itself alone, the plaintiff may recover." 1 Shearm. & Redf. on Neg., sec. 102. The following is to the same effect: "Reduced to a canon, it amounts to this: Slight negligence on the part of a plaintiff, although never so much contributory negligence, is not a defense to gross negligence on part of the defendant." Beach on Con. Neg., sec. 25; see, also, Pierce on Rys., 328; Patt. Ry. Acc. Law, 59; Bish. on Non-Con. Law, sec. 471.

This is the doctrine of the Supreme Court of Illinois, and has been recognized in a modified form in Georgia and Tennessee. The text writers generally agree, that it is not now recognized as the law in the courts of any other State, or of the United States or of England. They also lay it down as an exceptional and unsound rule. There is an overwhelming weight of judicial authority against it.

The only case in this court which apparently recognizes the doctrine is Railway v. Rushing, 69 Texas, 317. There the court had charged the jury, in effect, that the plaintiff could recover if he "was only guilty of slight negligence and the defendant's servants were guilty of gross negligence." In the opinion the court say: "It is not complained that this charge is not good law, but that the facts did not warrant its being given, there being no proof that the defendant's servants or employes were guilty of wanton recklessness or gross negligence." The opinion then proceeds to show that there was evidence of gross negligence, and nowhere discusses the legal propositions announced in the charge. That proposition was, however, not erroneous, because if the plaintiff's negligence was only slight, that is to say, if he was not guilty of ordinary negligence, he was entitled to recover, provided the servants of defendant had been guilty of negligence, either gross or ordinary.

The doctrine, that any degree of negligence which may be gross on part of a defendant will enable a plaintiff to recover, notwithstanding his own negligence, is unsound in principle. The damages allowed by law for a wrong negligently inflicted are given, except in peculiar cases, as a

compensation, and not as a punishment for the injury. Where the plaintiff's own negligent conduct has contributed to the injury—that is to say, where but for his own negligence, the damage would not have occurred—to allow him compensation for his loss would be to compensate him for his own negligent misconduct. It is true, that in case of gross negligence exemplary damages may be allowed; but the rule in this State is, that where there is no actual damage, exemplary damages can not be recovered.

But there are cases in which a plaintiff who is chargeable with concurring negligence may still recover. If, for example, the servants of a railroad company discover a trespasser upon the track, they must use all reasonable precautions to avoid injuring him; and it may be also, that where it is their duty to keep a lookout for persons upon the track, and when if this duty had been performed one passing along it would have been discovered in time to have warned him or to have stopped the train, and this duty has not been performed, and the trespasser has been run over and injured, the company will be liable to respond in damages.

The negligence or trespass of a person does not place him beyond the protection of the law, and does not excuse another for the failure to exercise care to avoid injuring him; much less does it justify a willful injury. In such a case, although the negligence of the plaintiff, in one sense at least, contributes to the injury, the negligence of the defendant intervenes between the plaintiff's negligence and the result, and becomes the proximate cause of the injury. As some of the authorities put it, the plaintiff's negligence in such cases becomes the condition and not the efficient cause of the accident.

The leading case upon this subject is Davis v. Mann, 10 M. & W., 546, "where the plaintiff, having fettered the legs of his donkey, had turned him out into the public highway to graze, and while there the defendant, driving recklessly, ran over" and injured the animal. The plaintiff was held entitled to recovery. The decision is correct, and the rule is now the accepted law, though the case seems to have given rise to some confusion in determining later cases.

But in connection with the doctrine just announced, it has been laid down, that " when contributory negligence is relied on as a defense to an action to recover damages for personal injuries, if it be shown that they were inflicted recklessly, wantonly, or intentionally, such defense is vitiated and overcome." 2 Wood's Ry. Law, 1258. The author adds: " But in order to avoid the defense of contributory negligence, it is not necessary that the wrongful act of the defendant, its agents, or servants should be wanton *and* intentional." Citing Cook v. Railway, 67 Ala., 533; Tanner v. Railway, 60 Ala., 621. In both the cases cited, the servants of the respective defendants discovered the persons injured upon

the track in time to have avoided passing over them. They come strictly under the rule of Davis v. Mann, supra.

Judge Cooley says: "Where the conduct of the defendant is wanton and willful, or where it indicates that degree of indifference to rights of others which may be justly characterized as recklessness, the doctrine of contributory negligence has no place whatever, and the defendant is responsible for the injury he inflicts, irrespective of the fault which placed the plaintiff in the way of such injury." Cool. on Torts, 2 ed., 810. When the numerous authorities which the author cites are examined, they are found in the main to be cases in which the defendant or his servants discovered the injured party in time to avoid the injury, or in which they ought to have discovered him. They do not support the doctrine that in every case of gross negligence the injured party may indemnify himself at the expense of the defendant, although by the use of ordinary care he could have avoided the injury.

That contributory negligence is no defense to an injury intentionally inflicted is clear. One who beats another can not urge the defense that the plaintiff might have escaped the battery by running away. The words "wanton" and "reckless," as applied to this class of cases, seem to us to be somewhat indefinite in their meaning. If they are intended to apply to a case in which the defendant sees the danger of the plaintiff in time to prevent his injury, and takes no steps to prevent it, we fully concur in the proposition, that the fact that the plaintiff negligently placed himself in position to be injured is not a defense to the action. Such is not the case before us. Dr. McDonald stepped upon the track of the railroad immediately in front of the engine, and in very close proximity to it, as is shown by the fact that he was thrown off on the side upon which he entered the roadbed. It was an act of negligence which the engineer could hardly have anticipated, even if he had been on the lookout and had discovered him running along the track.

We think the court did not err in its instruction in reference to contributory negligence; nor do we think there was error in refusing the requested charges on the same subject.

It is assigned that it was error to fail to charge the jury as to the duty of the defendant's servants to do what they reasonably could to avoid injury to Dr. McDonald after his danger was discovered, or by the use of ordinary diligence might have been discovered. A mere failure to give an instruction, when no request has been made for it, is not error.

Whether or not the verdict of the jury was contrary to the evidence is a question of fact, which we have no power to determine.

The ruling of the Court of Civil Appeals in this case is in conflict with the ruling of the Court of Civil Appeals for the First Supreme Judicial District upon the question of contributory negligence, as is shown by the case of Railway v. Brown, 2 Texas Civil Appeals, 281. For this reason

this court has jurisdiction to hear and determine the cause, notwithstanding the judgment was reversed and the cause was remanded by the judgment of the intermediate court.

We find no error in the judgment of the District Court of Williamson County, and therefore the judgment of the Court of Civil Appeals for the Third Supreme Judicial District is reversed and the judgment of the District Court is affirmed.

*Affirmed.*

Delivered June 8, 1893.