HENRIETTA KUEHN ET AL. V. MISSOURI, KANSAS & TEXAS
RAILWAY COMPANY OF TEXAS.

No. 875.

Contributory Negligence—Peremptory Charge.—Where the deceased while lying on the track of the defendant was killed by its train, and the liability of the defendant depends upon the question whether the defendant's servants could have discovered the peril of the deceased in time to have saved him, and the evidence necessitates the conclusion that the deceased was guilty of negligence which contributed to his death, and it will admit no other inference, it is not error for the court to give a peremptory instruction for the defendant.

APPEAL from Austin.   Tried below before Hon. H. TEICHMULLER.

*Bell & Shelburne* and *W. J. Glenn*, for appellants.

*Edwin B. Parker*, for appellee.

WILLIAMS, ASSOCIATE JUSTICE.—Appellants sued to recover damages resulting from the death of Ludwig Kuehn, of whom Henrietta Kuehn is the widow, and the other plaintiffs are the children, alleging that the said Ludwig was negligently, willfully, and wantonly run over and killed by servants of defendant in charge of one of its trains, while he was lying in a fit upon defendant's track. The defendant's answer contained a general denial, a special denial of the charge of negligence, and a plea of contributory negligence, consisting in the fact that deceased, when killed, was lying drunk upon the track, and was a trespasser.

The court below, after hearing the evidence, instructed the jury to return a verdict for the defendant, which was accordingly done. This peremptory instruction and the refusal of special charges requested by plaintiffs, by which they sought to have defined to the jury states of fact upon which, if found from the evidence, they contended they would be entitled to recover, are the rulings assigned as errors. The uncontradicted evidence showed that deceased was lying across the track of the railroad, and there was testimony from which the jury could have found that those operating the train, by looking ahead, could have discovered him in time to have stopped the train and saved his life. But the jury could not we think have found, consistently with the evidence, that defendant's servants did in fact see deceased. Their evidence is uncontradicted to the effect that they did not see him, nor know that they had run over him, but passed on to the next station before they were advised of the fact. All of their conduct at the time was consistent with the assumption that they did not discover him, and there is no circumstance to contradict their statements that they did not, unless it is found in the fact that they could have seen him had they been looking ahead. They made no effort to stop the train, nor did any act indicating a consciousness of the presence of a person on the track, but went on as if ignorant that a man had been killed. To hold, under these circumstances, that they did see the deceased, would be to impute to them not only false swearing, but a willful homicide, characterized by the most callous indifference to human life. Without other evidence tending to establish such a conclusion, we do not think the jury could properly have reached it. The case must therefore depend upon the question whether or not a liability of defendant could result from the failure of its servants to discover the peril of deceased in time to have saved him. The engineer and fireman testify that, before reaching the point where deceased lay, they were engaged in the performance of other duties which, for the time, rendered it impracticable for them to watch the track; and their evidence on this point, as far as it goes, is not contradicted; but they also make

statements from which the jury could have concluded that the engineer had finished the work which occupied his attention, and was free to keep a lookout for a sufficient time before reaching deceased to have seen him and stopped the train. If, therefore, it was their duty to keep a lookout for the purpose of discovering such persons as deceased was, the jury could have found that they omitted to perform that duty, and were therein guilty of negligence. Upon this point, we think the decision of the Supreme Court in Railway v. Sympkins, 54 Texas, 621, expresses the law as it is in this State, "that a 'reasonable lookout,' varying according to the danger and all surrounding circumstances, is a duty always devolving on those in charge of a railroad train in motion;' and "that the watchfulness required depends on all the circumstances, having reference to all the duties of the engineer, and that it is for the jury to say whether, under the circumstances, he not only could but should have discovered the plaintiff in time to have stopped the train." So that the reason why a trespasser upon a railway track when struck by a car is often not allowed to recover damages is not because there is no duty resting upon those operating the car, but because such person, being himself in fault, can not be compensated for a consequence to which his own wrong or negligence has contributed. If the railway company is guilty of negligence, so is the party thus hurt, and public policy forbids that he should be allowed to profit by his own wrong. Consequently, if the person on the track is not in fault, or though in fault originally in getting on the track, if that fault has not in a legal sense contributed to the injury, he can hold the railroad company liable if it has failed to perform its duty as defined, and has thereby brought about the damage. If the evidence necessitated the conclusion that deceased was guilty of negligence which contributed to his death, and would admit no other inference, the charge of the court was correct.

Deceased had started along the track from the town of New Ulm to his home, which was some distance east or south of that place, and had either fallen or laid down across the track, and was in that position when the train passed over him. Unexplained, this act of his was plainly a negligent one, and as it continued up to the moment of collision, it evidently contributed to his death. The plaintiffs advanced the theory that he had fallen in a fit, and that this, intervening between his original act in getting on the track, when there was no danger, and his death, broke the causal connection between that act and the final catastrophe, and freed him from the charge of contributory negligence, and entitled plaintiffs, under the principles recognized in the Sympkins case, to recover. The defendant, on the other hand, contended that deceased was intoxicated. Whether he was intoxicated or not, his act was negligent unless it is explained in the way suggested. There was no evidence which tended to show that deceased had fallen in a fit or convulsion of any sort. He had passed middle age, had never had a fit, and there was no reason to suppose that he

would ever have one. Of the two witnesses who, from a distance, saw him upon the track just before the train passed over him, one stated, "he was lying across the track with his feet south and his head north; * * * his legs were drawn up;" and the other said, "he was lying upon his back, with his knees drawn up; knew he was alive when he first saw him on the track, because he saw him move his legs and knees; move them together like this" [illustrating].

On the other hand, it was shown that he drank and would sometimes become intoxicated; that he had, within a few hours before his death, taken a number of drinks, not less than four, and possibly six or eight, as testified to by witnesses. After thus drinking, he started home. There is direct evidence, however, that within a half-hour before his death he was not drunk, but appeared to be sober, and other evidence that three or four drinks would not intoxicate him. Physicians testified, that a fit or convulsion would be attended with contraction of the muscles which might draw up the limbs as indicated by the witnesses, but that that fact alone would not justify them in the opinion that he had a fit. They also testified, that a person completely intoxicated could not hold his limbs in that position, but that there were different degrees of intoxication, and that the fact that the legs of deceased were in that position was not sufficient information on which to found medical opinion as to what was the matter with him. Under these facts, we do not think the jury would have been warranted in finding that deceased had been stricken down with a convulsion. If the fact that he did lie there until struck is to give rise to the inference that he was laboring under some disability which prevented him from protecting himself, the inference which the evidence suggests as probable must be adopted. There is no evidence to indicate that he had a fit, while there is evidence that he may have been sufficiently under the influence of liquor to cause him to fall or lie upon the track. This is not inconsistent with the testimony of the witnesses who saw him some time before his death, that he did not then appear to be intoxicated, as the effect of the liquor which he had drunk probably developed later. But whether the proof should be held to show that he was intoxicated or not, his act in placing himself upon the track and remaining there until struck by the engine must be held negligent, as the explanation offered is not sustained by the evidence. If it were conceded that defendant's servants were guilty of gross negligence in failing to see deceased upon the track, that would not help plaintiff's case, when deceased was also guilty of contributory negligence. McDonald v. Railway, 86 Texas, 12.

The court did not err in refusing the special instructions requested, nor err in instructing a verdict for defendant.

*Affirmed.*

Delivered June 13, 1895.