**T. E. PARROTT et al., Petitioners,**

v.

**Robert GARCIA et al., Respondents.**

No. B–998.

Supreme Court of Texas.

Jan. 29, 1969.

Alvin E. Wiggins and Daylee Wiggins, Beaumont, for petitioners.

Orgain, Bell & Tucker, John G. Tucker, Keith, Mehaffy & Weber, O. J. Weber, Jr., Beaumont, John O. Young, Orange, for respondents.

GREENHILL, Justice.

This suit was brought to recover damages for personal injuries resulting from a "drag race" on a public highway within the town of Vidor, Texas. As will be developed below, the plaintiff was not one of those driving either of the racing cars, but he participated to some degree in the holding of the race. The defendants were the drivers of the late model passenger cars engaged in the race, one of which struck the plaintiff's car. The trial court entered a summary judgment for the defendants. The Court of Civil Appeals at Beaumont affirmed upon the basis of a statute which prohibits the holding of a race for speed upon a public highway. 428 S.W.2d 476. We affirm.

The facts relevant to this opinion are these: A group of teenagers met at a drive-in restaurant about 9:30 at night. It was determined that there would be a drag race on Railroad Street in Vidor, a part of the State's public highway between Beaumont and Orange, Texas. The race was to be between the defendants Robert Garcia and Jeff Mumford. Tommy Joe Parrott, for whom the suit was brought and who will here be called the plaintiff, followed the defendants to the scene in his car. The plaintiff took other boys to the race. While the plaintiff's memory was very bad as to who proposed and set up the race, he did concede in his deposition that he measured with his car's speedometer the quarter mile to be raced, and he let out one of his passengers to be the flagman at the end of the first race.

Before the first race, the plaintiff drove his car down the course to be driven and parked his car off the highway. The race was then run at speeds estimated between 75 and 85 miles per hour. Thereafter the plaintiff drove to the area of the highway near the finsh. His passenger, who had acted as finish flagman, entered plaintiff's car. It was then determined that the race between Garcia and Mumford would be run again in the opposite direction. So the plaintiff's passenger got out of plaintiff's car to act as starting flagman in the second race. The plaintiff drove down the two-lane highway in front of the cars which were to race, apparently to watch the finish and because he wanted to turn around. He made no arrangements for the racers to wait until he was out of the way. He proceeded at about 30 to 35 miles per hour. Meanwhile, however, the flagman signaled the start of the second quarter mile drag race. The racing cars, again traveling 75 to 85 miles per hour, overtook the plaintiff's car just past the end of the race. The plaintiff had been driving on the right hand side of the highway, but he turned to the left in front of the racing cars to get off the highway. The car of the defendant Garcia, who won the second race, struck the plaintiff's car broadside at the driver's seat.

The plaintiff said he saw in his rear view mirror the lights of the racing cars approaching, but could not estimate their speed. The plaintiff had done some drag racing himself, and he thought he could proceed with safety. He knew the defendants intended to race on the public highway at speeds up to 85 and 90 miles per hour. He was driving a new GTO Pontiac which was capable of outdistancing either of the defendants' cars had he proceeded straight down the highway. He acknowledged that he knew it would be dangerous to be on that highway that night; that it would be dangerous for anyone; and that the cars would be racing toward him in the second race.

■ There is other testimony from the defendants as to the plaintiff's active par-

ticipation in setting up and conducting the race; but for purposes of reviewing the summary judgment action, it will be disregarded. A summary judgment is proper if the pleadings, depositions, and admissions on file show that there is no genuine issue as to any material fact. Rule 166–A, Texas Rules of Civil Procedure. The burden of proof is on the movant, and all doubts as to the existence of a genuine issue of material fact are resolved against him. All conflicts in the evidence are disregarded, and the evidence which tends to support the position of the party opposing the motion is accepted as true. These and other principles relating to summary judgment procedure are set out in Great American Reserve Ins. Co. v. San Antonio Plumbing Supply Co., 391 S.W.2d 41 (Tex. Sup.1965).

Article 795 of our Vernon's Ann.Penal Code provides that "No race or contest for speed between motor vehicles of any kind shall be held upon any public highway." A fine of up to one hundred dollars is provided. Other articles, all of the Penal Code, define who are principals or accomplices to the offense. Article 65 says that all persons are principals who are guilty of acting together in the commission of an offense. Article 66 provides in part,

"When an offense is actually committed by one or more persons, but others are present, and knowing the unlawful intent, aid by acts or encourage by words * * * those actually engaged in the commission of the unlawful act, * * * such persons so aiding, encouraging or keeping watch are principal offenders."

Article 69 says,

"Any person who advises or agrees to the commission of an offense and who is present when the same is committed is a principal whether he aid or not in the illegal act."

The depositions of the two defendants and of the plaintiff establish without contradiction that the plaintiff knew of the unlawful intent to violate the statute prohibiting the holding of a race on a public highway; he was present when arrangements for the race were made; he voluntarily proceeded to the scene; and he participated at least to the point of marking the quarter mile course and dropping off the flagman for the finish of the first race and the start of the second. The prohibition of the statute is not that of *driving* in a race on the public highway; it prohibits the *holding* of a race upon a public highway. Under the provisions of the Penal Code set out above, the plaintiff, by his own admission and the undisputed testimony of the defendants, was a principal in the holding of a race in violation of Article 795.

What, then, is the legal effect in a civil suit for damages of the violation by a plaintiff of a criminal statute? The statute itself does not say that civil liability or denial of damages should follow upon the violation of the statute. And this Court has held that not every violation of a criminal statute will result in a declaration by the Court that the violator is guilty of negligence [or contributory negligence] per se. East Texas Motor Freight Lines v. Loftis, 148 Tex. 242, 223 S.W.2d 613 (1949); Rudes v. Gottschalk, 159 Tex. 552, 324 S.W.2d 201 (1959).

It was held in *Loftis* that "whether the violation of an ordinance or a statute can be held to be negligence as a matter of law depends at least in part on whether a purpose of the ordinance [or statute] was to afford protection against the hazard involved in the particular case." And in Rudes v. Gottschalk, this Court said that in the usual negligence per se case, "we are concerned with alleged conduct which would be considered substandard even in the absence of statute. We adopt the statutory test rather than that of the ordinarily prudent man as the more accurate one to determine negligence because the Legislature, by reason of its organization

and investigating processes, is generally in a better position to establish such tests than are the judicial tribunals." 324 S.W.2d at 204.

Much has been written upon the wisdom or desirability of using the violation of a criminal statute, silent as to civil consequences, as the basis for negligence or contributory negligence per se. Prosser, Law of Torts (1964), Chapter 5, section 35; 2 Harper & James, The Law of Torts (1956), §§ 17.5 and 17.6; Restatement of Torts, Second (1965), §§ 286 through 288B; Prosser, Contributory Negligence as Defense to Violation of Statute, 32 Minn.L.Rev. 105 at 111 (1948); Thayer, Public Wrong and Private Action, 27 Harv.L.Rev. 317 (1913); Morris, The Role of Criminal Statutes in Negligence Actions, 49 Columbia L.Rev. 21 (1949).

■ As applied to this case, in the light of the above authorities, we are of the view that the violation of the statute constituted contributory negligence per se. The Legislature plainly set out prohibited conduct. An object of the statute was to prevent injury growing out of racing on the highways. This injury grew directly out of the prohibited conduct. It was of the class of conduct or hazard which the legislation was designed to guard against. See, for example, Mackey v. State of Texas (Tex.Cr.App.1966), 400 S.W.2d 764, where death resulting from a highway race in violation of Article 795 was held to constitute the basis for a conviction of negligent homicide.

The plaintiff here participated at least in part in the breach of the duty or standard of conduct prescribed or prohibited by the Legislature. He offered no substantial excuse for the conscious and deliberate violation of the statute or his participation as a principal.[1]

■ As stated, not every violation of a criminal statute results in negligence or contributory negligence per se. But where the Legislature, at least in instances where the conduct is substandard even in the absence of legislation, has declared that particular acts shall not be done, it fixes a standard of reasonable care for the community; and the deliberate, unexcused participation in the violation of the statute constitutes negligence or contributory negligence as a matter of law.

The above holding was a basis of this Court's action in denying the writ of error in Shaver v. Manziel, 347 S.W.2d 20 (Tex. Civ.App.1961, writ refused, n. r. e.). In *Shaver,* the two racing cars collided with each other, and recovery was denied in a suit between the drivers. We extend that holding to a willing participant or principal in the holding of the race as prohibited by Article 795 of the Penal Code.

We also agree with the Court of Civil Appeals that the acts of the plaintiff which constituted negligence as a matter of law were a proximate cause as a matter of law. The foreseeable risks of holding a drag race upon a highway in violation of the statutes of this state include the risk that someone in the zone of danger of the race would be injured. The zone of danger in this instance would include the area of the two-lane highway to be raced upon, and at least that additional portion of the highway

---

1. Excuse or justification has sometimes been held to prevent or modify the civil consequences of the violation of a criminal act. For example, when the party who has had his car properly inspected, has his tail lights go out at night without his knowledge; or where the driver, proceeding on the right hand side of the road, turns into the left hand lane to avoid a darting child. There may be other grounds of negligence, but violation of the statutes under the circumstances is not negligence per se. See Harper & James, supra, at page 1010; Prosser, Law of Torts, supra, at page 198; Morris, The Role of Criminal Statutes in Negligence Actions, 49 Columbia L.Rev. 21 at 33 (1949); and Restatement of Torts, Second, § 288A.

which would be required to stop the cars upon completion of the race. The plaintiff was knowingly in this zone of danger. As stated above, he conceded that he knew [realized or foresaw] that it would be dangerous to be on that highway that night.

The present Court has inherited the well established common law principle that contributory negligence proximately causing injury is a bar to recovery against a negligent defendant. The comparative degree of negligence is not material. The argument of the plaintiff, therefore, that he was passively negligent while the defendants were actively negligent is of no avail. Contributory negligence is a defense even to the gross negligence required for a recovery under the guest statute. Schiller v. Rice, 151 Tex. 116, 246 S.W.2d 607 (1952). In McDonald v. International & G. N. Ry. Co., 86 Tex. 1, 22 S.W. 939 (1893), plaintiff's counsel requested an instruction to the jury that the plaintiff should recover, even though he was guilty of ordinary negligence, if the jury found that the agents of the defendant were grossly negligent. It was held that the requested instruction was correctly refused. The Court observed that the rule would not apply to injury intentionally inflicted by the defendant or to cases involving discovered peril. Intentional harm was not alleged here, and there was no point of error in the plaintiff's motion for rehearing in the Court of Civil Appeals or in his application for writ of error raising the issue of discovered peril.

This disposition of the case makes it unnecessary for us to pass upon other grounds urged as constituting contributory negligence as a matter of law such as the plaintiff's changing lanes upon the highway, turning left in front of the approaching cars, and his failure to arrange for the race to be delayed until he was safely out of the way.

The judgments of the trial court and the Court of Civil Appeals are affirmed.