ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY v. I. L. MILLS.

Decided February 26, 1908.

**1.—Personal Injuries—Assumed Risk—Charge.**

Upon the issue of assumed risk in a suit for damages for personal injuries, the court charged the jury that "he (the plaintiff, an employee) does not assume the risks of any danger that may be brought about by the railway company or its other servants or employees, unless he knows of such negligence and the attendant risks, or in the ordinary discharge of his duties must necessarily have acquired the knowledge." Held not subject to the objection that it rendered the company liable for all the dangers brought about by itself, while the liability should be confined to such dangers as are brought about by its want of ordinary care.

**2.—Negligence—Act of Omission.**

An act of omission may constitute negligence as well as one of commission. Where an engineer sent the fireman under the engine to perform some duty, and, while the fireman was in this dangerous position, failed to use the means at hand to prevent the engine from moving, the railway company was liable for injuries resulting from the engine moving its position.

**3.—Same—Degree of Care—Charge.**

A charge which makes it the absolute duty of a railroad company to keep its engines in a safe condition, instead of to exercise ordinary care to keep its engines in such condition, is erroneous.

**4.—Same—Charge.**

In a suit for personal injuries, a charge that the defendant would be liable if the injuries resulted from the failure of the engineer "to place the reverse lever at the center notch of the quadrant," or by reason of his failure "to open the cylinder cocks to permit the steam to escape, or both," was correct and not upon the weight of the evidence.

**5.—Laws of Other States—Presumption.**

In the absence of pleading and proof to the contrary, the laws of other States are presumed to be the same as the laws of this State, and a requested charge stating the law to be different, is properly refused.

**6.—Comparative Negligence—Act of Congress Unconstitutional.**

The doctrine of comparative negligence is not recognized by the courts of this State, and the Act of Congress, known as the "Employer's Liability Act," which made provision for employees recovering for damages where the contributory negligence of the employee "was slight and that of the employer was gross in comparison," has been declared unconstitutional.

**7.—Law—Constitutionality.**

Where a law is valid in part and invalid in part, but the valid and invalid parts are so interwoven and dependent that they cannot be separated, the whole law must be held void.

Appeal from the District Court of El Paso County. Tried below before Hon. J. M. Goggin.

*J. W. Terry* and *A. H. Culwell,* for appellant.—The courts in this State will take judicial notice of the laws of the Territory of New Mexico, and under those laws the appellee and Bottorff were fellow servants, and plaintiff was not entitled to recover for the negligence of the engineer. Belt v. G., C. & S. F. Ry. Co., 4 Texas Civ. App., 231; Appollos v. Staniforth, 3 Texas Civ. App., 502.

Under the laws of Texas (that of the Territory, except as modified by the Act of Congress, presumably being the same) plaintiff in an injury suit can not recover where he has been guilty of ordinary negligence. McAndrews v. Chicago, L. S. & E. Ry., 222 Ill. 232; Cooley on Torts, 1438, 1414, 1415, 1440; Chicago, B. & Q. Ry. v. Johnson, 103 Ill., 512; Calumet, I. & S. Co. v. Martin, 115 Ill., 358; Kansas Ry. v. Peavy, 29 Kan., 169.

*Patterson & Wallace,* for appellee.

FLY, ASSOCIATE JUSTICE.—This is a suit for damages arising from personal injuries alleged to have been inflicted upon appellee through the negligence of appellant, in the Territory of New Mexico, on November 14, 1906. Appellant answered by general and special exceptions, general denial, and pleas of the injuries having been inflicted through the negligence of a fellow servant, and assumed risk and contributory negligence. The trial resulted in a verdict and judgment in favor of appellee in the sum of $5,500.

The first assignment of error brings in review the following charge, given by the court: "You are instructed that railway companies are not to be regarded as insurers of the safety of their employees, for under the law they are not insurers; and one who enters the employment of a railway company assumes all the risks that are ordinarily incident to the business, but he may assume that the railway company and its other servants and employes have exercised ordinary care to do their duty, and he does not assume the risks of any danger that may be brought about by the railway company, or its other servants or employes, unless he knows of such negligence and the attendant risks, or in the ordinary discharge of his duties must necessarily have acquired the knowledge." The charge is claimed to be erroneous because it does not distinguish between the risks assumed and those not assumed; because it renders the company liable for all the danger brought about by itself, while it should be confined to such dangers as are brought about by its want of ordinary care. We think the charge intended to express the principle that the servant does not assume the risks arising from the negligence of the master unless they are known

or should be known by him, but it might have been clearer, per-
haps, if well established precedents had been followed in giving
the instructions.  The Supreme Court has approved a charge stating
that "by the use of the expression, 'a risk ordinarily incident to the
employment,' is meant a risk of injury that does not arise or grow
out of an act of negligence on the part of the defendant or its
servants, and whenever a risk is created by an act of negligence
on the part of a railroad company or its employes, this is not a
risk ordinarily incident to the employment." Texas & N. O. Ry.
v. Kelly, 98 Texas, 123.  No doubt but what the charge of the court
was intended to convey the same ideas.

It was clearly the duty of the engineer to exercise ordinary care
in preventing the engine from moving while appellee was under
it discharging his duty, and the court did not err in so instructing
the jury.  An act of omission may constitute negligence as well as
one of commission.  Inactivity may, under proper circumstances,
constitute the grossest character of negligence.  The duty devolved
upon appellant not only to use reasonable care in furnishing safe
appliances, but to use ordinary care in so using them as to prevent
injury to its employes, and there is no force in the contention that
appellant would be liable for a "positive act" in the handling of
the locomotive, but it would not be liable "for the nonaction of
the engineer."  The engineer sent appellee under the engine, and
if he failed to use the means at hand to prevent the engine from
moving while appellee was in his position of danger, appellant
would be liable for the resultant damages.  This principle is often
applied in cases of persons known to be on the track or in other
positions of danger.

The statement in the charge that appellant was liable if it "failed
to keep the throttle of said engine in a reasonably safe condition
and state of repair," conflicts with decisions of the Appellate Courts
of this State.  Texas & Pac. Ry. v. McCoy, 90 Texas, 264; Texas
& N. O. Ry. v. Black (Texas Civ. App.), 44 S. W., 673.  It was
the duty of appellant to exercise ordinary care "to keep the throttle
of said engine in a reasonably safe condition," but the charge makes
it an absolute duty to keep it in such condition.

If the accident occurred by reason of the failure of the engineer
"to place the reverse lever at the center notch of the quadrant,"
or by reason of his failure "to open the cylinder cocks to permit
the steam to escape, or both," appellant was liable and the court
properly so instructed the jury.  It was not upon the weight of
the evidence.

As the court gave the requested charge, the refusal of which is
complained of in the sixth assignment of error, it would seem
that there should be no cause of dissatisfaction on the part of ap-
pellant.

Appellant requested the court to charge the jury that under the
laws of New Mexico a master is not liable for the negligence of a
fellow servant, and that under those laws an engineer and fireman
are fellow servants, and if appellee was injured by the negligence
of the engineer, he could not recover damages from appellant.  The

charge was properly refused. What the laws of New Mexico. may have been was not shown by the testimony, and "it is well settled that in the courts of this State, in the absence of pleading and proof to the contrary, the laws of another State are presumed to be the same as the laws of Texas." National Bank of Commerce v. Kenney, 98 Texas, 293. It is stated in a proposition under the assignment of error assailing the action of the court in refusing the charge, that it was admitted that under the laws of New Mexico the engineer and appellee were fellow servants, but the record does not disclose any such agreement. Page 179 of the stenographer's transcript of the evidence is referred to for the admission, but the admission, if any, was not made by appellee, but by appellant. The only matter found on the page referred to is as follows: "Counsel for defendant: It is considered that the fellow servant law is in force in the Territory of New Mexico, and as to the Act we will consider that as having been introduced." We do not think that language shows what the laws are in New Mexico on the question of fellow servants.

There is no merit in the eighth assignment of error, and the ninth will not be considered because the charge, of which complaint is made, is not pointed out in the assignment, proposition or the so-called statement. The complaint is of a charge which was given, and yet in the statement it is said: "The court did not direct the jury as set out in this assignment."

The court erred in instructing the jury on the question of comparative negligence. The doctrine of comparative negligence is not recognized by the courts of Texas, but has been expressly repudiated by them. McDonald v. International & G. N. Ry., 86 Texas, 1; Missouri, K. & T. Ry. v. Rodgers, 89 Texas, 675. The charge was no doubt predicated on the terms of the Act of Congress of. July 11, 1906, known as the "Employers' Liability Act," which made provision for employes, or their representatives, recovering for damages where the contributory negligence of such employes "was slight and that of the employer was gross in comparison." That Act was declared unconstitutional by the Supreme Court of the United States in the case of Howard v. Railway, through a decision rendered on January 6, 1908. U. S. Sup. Ct. Adv. Sheets, February 1, 1908, 141. While the Act was declared unconstitutional and invalid because it was an invasion of the rights of the States, yet it was declared to be invalid, not only as to the States, but also as to the Territories and the District of Columbia. In the opinion of the court, delivered through Mr. Justice White, it was shown that the parts of the Act were so blended and interwoven that if one part was unconstitutional the whole Act was destroyed. The court said: "The principles of construction invoked are undoubted, but are inapplicable. Of course, if it can be lawfully done, our duty is to construe the statute so as to render it constitutional. But this does not imply, if the text of an Act is unambiguous, that it may be rewritten to accomplish that purpose. Equally clear is it, generally speaking, that where a statute contains provisions which are constitutional and others which are not, effect may be given to

the legal provisions by separating them from the illegal. But this applies only to a case where the provisions are separable, and not dependent one upon the other, and does not support the contention that that which is indivisible may be divided. Moreover, even in a case where legal provisions may be severed from those which are illegal, in order to save, the rule applies only where it is plain that Congress would have enacted the legislation with the unconstitutional provisions eliminated." Speaking on the same subject, Mr. Justice Moody in his dissenting opinion said: "Nor can the statute be saved by rejecting that part of it which is unconstitutional, because its provisions are single and incapable of separation. The vicious part, if such exist, is so intermingled with that which is good that it can not be eliminated without destroying the whole structure." On that proposition the whole of the Justices of the Supreme Court of the United States agreed. In concluding the opinion of the court Mr. Justice White said: "Concluding, as we do, that the statute, whilst it embraces subjects within the authority of Congress to regulate commerce, also includes subjects not within its constitutional power, and that the two are so interblended that they are incapable of separation, we are of the opinion that the courts below rightly held the statute to be repugnant to the Constitution and nonenforceable." The two subjects referred to as being interblended means, of course, the constitutional and unconstitutional parts of the statute, and must refer to that part of the law relating to the Territories and the District of Columbia and that part relating to the States.

In the case of Illinois Cent. Ry. v. McKendree, 203 U. S., 514, which was cited in the Howard case, the court was passing upon the constitutionality of a quarantine order issued by the Secretary of Agriculture, and held the order to be unconstitutional, because it applied to cattle transported between points in the State of Tennessee, as well as to points in other States. The court said: "It is true the Secretary recites that legislation has been passed by the State of Tennessee to enforce the quarantine line, but he does not limit the order to interstate commerce coming from the south of the line, and as we have said the order in terms covers it. We do not say that the State line might not be adopted in a proper case, in the exercise of Federal authority, if limited in its effect to interstate commerce coming from below the line, but that is not the present order, and we must deal with it as we find it. Nor have we the power to so limit the Secretary's order as to make it apply only to interstate commerce, which it is urged is all that is here involved. For aught that appears upon the face of the order, the Secretary intended it to apply to all commerce, and whether he would have made such an order, if strictly limited to interstate commerce, we have no means of knowing. The order is in terms single and indivisible." So it can be said of the Act under consideration. Courts have no means of knowing that Congress would have passed the law in question and made it applicable to the District of Columbia and the Territories alone, and to strike out por-

tions of a section of the Act to make it conform to that hypothesis would be making, by judicial construction, a law which Congress did not make. Trade Mark Cases, 100 U. S., 82. We conclude that the cases cited, and others, established the unconstitutionality of the whole of the Act of 1906.

The allegations in the petition, considered in the light of the record before us, form the basis for a recovery against appellant, independent of the unconstitutional Federal statute, and judgment will not therefore be rendered in this court. The judgment is reversed and the cause remanded.

*Reversed and remanded.*