MÁRQUEZ *v.* NEW YORK AND PORTO RICO S. S. Co.

APELACIÓN procedente de la Corte de Distrito de Ponce.

No. 599.—Resuelto en mayo 5, 1911.

PRUEBAS CONTRADICTORIAS—APRECIACIÓN DEL TRIBUNAL SENTENCIADOR—INJUS-
TICIA MANIFIESTA.—Es jurisprudencia constante de los Estados Unidos y de
este tribunal, que cuando la prueba es contradictoria, la apreciación que de la
misma ha hecho el tribunal sentenciador no será modificada en apelación, a
menos que se demuestre que es claramente errónea o ha causado injusticia
manifiesta a la parte vencida en el pleito.

RESPONSABILIDAD DE PATRONOS—LEY FEDERAL DE JUNIO 11 DE 1906—CUESTIÓN
PLANTEADA POR PRIMERA VEZ EN APELACIÓN.—Aún cuando no se haya plan-
teado en el tribunal inferior, la cuestión de si es o nó aplicable a un caso de
indemnización de daños y perjuicios, la Ley Federal de Responsabilidad de
Patronos de junio 11, 1906, puede alegarse dicha cuestión por primera vez en
apelación.

ID.—APLICACIÓN A PUERTO RICO DE LA LEY FEDERAL DE RESPONSABILIDAD DE
PATRONOS DE JUNIO 11 DE 1906.—No siendo las alegaciones de la demanda en
este caso suficientes para invocar la aplicación de la Ley Federal de Respon-
sabilidad de Patronos de junio 11, 1906, es innecesario resolver si está o nó
vigente en Puerto Rico dicha Ley Federal y qué efecto haya podido producir
con respecto a la validez de esta Ley en los Territorios de los Estados Unidos,

la declaración hecha por el   Tribunal Supremo de los Estados Unidos con respecto a la anticonstitucionalidad de esa ley en lo que respecta al comercio entre Estados.   (*El Paso & Northwestern Railroad Co.*, v. *Gutiérrez*, 215 U. S., 87.

ID.—LEY DE RESPONSABILIDAD DE PATRONOS DE PUERTO RICO—DEMANDA INSUFI-
CIENTE.—En una demanda de daños y perjuicios entablada por un empleado contra su patrono por lesiones recibidas y que por sus alegaciones no encaja dentro de los párrafos 2 y 3 de la sección 322 de los Estatutos Revisados de Puerto Rico, teniendo, por tanto, que regirse por el párrafo 1°. de la misma sección, y cuya demanda no alega que el daño fué originado, o no descubierto, o no remediado por la negligencia del patrono o de cualquiera persona a su servicio, no alega hechos suficientes para constituir una causa de acción de acuerdo con dicha ley.

ID.—CONOCIMIENTO DE LOS DEFECTOS O ESTADO PELIGROSO DEL SITIO DONDE SE
TRABAJA—ACEPTACIÓN DEL RIESGO.—Después que un empleado se da cuenta del estado peligroso del sitio en que trabaja y de los defectos que tiene, y sigue trabajando en él después de haberle llamado la atención a su patrono y de haber éste rehusado corregir dichos defectos, se presume que el empleado ha aceptado los riesgos consiguientes al estado peligroso del sitio en donde trabaja y no puede luego, en caso de accidente, reclamar daños y perjuicios.

Los hechos están expresados en la opinión.

Abogado del apelante: *Sr. José Tous Soto.*

Abogados del apelado: *Sres. E. S. Paine* y *N. B. K. Pettingill.*

EL JUEZ ASOCIADO SR. MACLEARY, emitió la opinión del tribunal.

El juicio en este caso tuvo lugar ante la Corte de Distrito de Ponce, en 20 de enero de 1910.  La sentencia fué dictada en 29 de abril del mismo año, contra el demandante, de acuerdo con la ley y los hechos.  El actor expone en su demanda, que la demandada, la New York and Porto Rico S. S. Co., es una corporación constituída legalmente en el Estado de New York, que hace negocios en  Puerto Rico, dedicándose al servicio de vapores para el transporte de pasajeros y mercancías entre los puertos de esta Isla, y el de New York; y alega dicho demandante que el día 15 de junio de 1909, estaba empleado por la compañía demandada en los trabajos de descarga de uno de los vapores de la misma, en el puerto de Ponce;  y que se hallaba trabajando en el '*tween-deck,*' o sea la bodega superior; y que entre la bodega superior y la inferior, había, en el suelo, una escotilla que estaba cerrada

con varias tablas que ·ajustadas las unas con las otras, forma-
ban una plataforma. Que una .de dichas tablas era demasiado
corta, y no llegaba hasta donde debía llegar, para cerrar la
escotilla; que debido a este hecho, al pasar el demandante por
dicha tabla, ésta se desprendió, cayendo al fondo de la bodega
inferior, y arrastrando en su caída al demandante; y que éste,
a consecuencia de tal accidente, sufrió lesiones de considera-
ción, que le causaron daños y perjuicios por valor de nove-
cientos noventa y nueve dollars ($999). .

La compañía demandada alega como primer defensa:

1º. Que la caída de la tabla era debida a la manera negli-
gente en que la habían colocado el mismo demandante y sus
camaradas, que eran sus compañeros de·trabajo.

2º. Que el demandante no sufrió lesiones a consecuencia de
dicha caída.

3º. Que no hubo negligencia por parte de· la compañía de-
mandada.

En su alegato, el apelante señala dos errores. *Primero,*
que la Corte de Distrito de Ponce ha errado en la aprecia-
ción de las pruebas, no estimando evidenciado que la caída del
demandante se debió a negligencia de la compañía deman-
dada. *Segundo,* que la corte de distrito ha incurrido en error
al desestimar la demanda, por no ser aplicable a este caso, la
doctrina de que la ' negligencia del *fellow-servant* (com-
pañero de trabajo) es imputable al *employee* (empleado).

Las pruebas, tales como se hallan consignadas en la expo-
sición de hechos, no son muy extensas, pero, ciertamente re-
sultan un tanto· contradictorias. El demandante declaró que
su caída y las consiguientes lesiones, resultantes de la mis-
ma, fueron causadas por la defectuosa condición de algunos
de los tablones que formaban la compuerta de la escotilla.
Por otra parte, el piloto del vapor declaró a favor de la com-
pañía demandada, que el accidente no fué causado por ningún
defecto de los tablones, sino por el hecho de que al empezarse
a sacar una eslingada de sacos de arroz, algunos de los ta-
blones de la plataforma fueron cogidos por las sogas de la

eslinga, y sacados de su sitio, de modo que el demandante, que seguía a la eslinga se fué por el agujero así formado. Con respecto a varios otros puntos importantes, los testigos del demandante y de la demandada, respectivamente, hicieron declaraciones directamente contrarias las unas a las otras; y es una regla bien conocida, y que ha sido establecida en la jurisprudencia americana, y en varias decisiones de este tribunal, que en los casos, en que las pruebas son contradictorias, las conclusiones del tribunal sentenciador no serán modificadas en la apelación, a menos que sean claramente erróneas o que resulten en manifiesta injusticia para la parte vencida en el pleito. *Morales* v. *Central Machete,* 2 Castro 603, y casos allí citados. No podemos, por tanto, decir que el tribunal sentenciador incurrió en error en la apreciación de las pruebas, y al no estimar que la caída del demandante era debida a la negligencia de la compañía demandada.

Pasaremos, por tanto, al segundo señalamiento de errores que se funda en el motivo, según se ha alegado, de que la doctrina con respecto al *fellow-servant* no es aplicable al demandante, por ser éste un empleado de la compañía demandada. En relación con este punto, el demandante, que es el apelante ante este tribunal, sostiene que la Ley Federal titulada *Employers' Liability Act* y aprobada en 11 de junio de 1906, es aplicable al presente caso. Esta afirmación era probablemente un concepto formado posteriormente, puesto que de los autos no aparece que esta cuestión fuera planteada ante la corte inferior. Pero esto no importa; se puede presentarla ahora ante este tribunal. El abogado de la compañía demandada, en su argumentación final ante esta Corte Suprema, admite francamente que la citada ley del Congreso, es la verdadera ley; y que siempre que en una demanda se consignen los hechos necesarios para la aplicación de dicha ley en un caso entre empleados y patronos, ante las cortes de esta isla, desde ese momento es aplicable exclusivamente, sin que sea necesario mencionar especialmente dicha ley en las alegaciones. Esto es claramente el efecto evidente de la re-

solución dictada en el caso de *El Paso & Northwestern Rail-
way Co.* v. *Gutiérrez, Adm'x.,* 215 U. S., 87. En el dictamen
emitido en ese caso, se discutió la primera Ley Federal ante-
riormente mencionada como aprobada en 1906; y el tribunal
declaró que aunque dicha ley había sido declarada anticonsti-
tucional por el Tribunal Supremo, en cuanto se refería al co-
mercio entre los Estados (*interstate commerce*) quedaba, sin-
embargo, en vigor, y era aplicable a otras clases de comercio.
Esta ley, según se ha dicho, había sido declarada anticonsti-
tucional por el Tribunal Supremo de los Estados Unidos, en
el año 1907; a lo menos en cuanto se refería al comercio entre
los estados. (Véanse *Employers' Liability Cases,* 207 U. S.,
463. Véase también *Atchison R. R. Co.* v. *Mills,* que es un ca-
so resuelto en Texas, 108 S. W., 480.) Pero se ha dicho por
el Juez Sr. Day, en el dictamen que a nombre del Tribunal
Supremo de los Estados Unidos, emitió en el caso de Gutié-
rrez, en 15 de noviembre de 1909, que:

"En la resolución de los *Employers' Liability Cases* (casos refe-
rentes a la responsabilidad de patronos), 207 U. S., 463, este tribunal
no declaró anticonstitucional la ley de 11 de junio de 1906, 3073
Stat., 232, en cuanto se refería al Distrito de Columbia y los territorios,
y expresamente se negó a interpretar dicha ley en el sentido de que
fuera aplicable solamente a aquellos empleados de conductores públi-
cos en dicho distrito y los territorios, que estaban ocupados en el
comercio entre los estados."

*El Paso & N. E. Ry.* v. *Gutiérrez,* 215 U. S., p. 88.

Pero cualquiera que sea el efecto que esta decisión pueda
tener con respecto a la validez del Estatuto Federal en los
Territorios de los Estados Unidos, no es necesario decidir en
este caso tal cuestión en cuanto a Puerto Rico concierne, ya
que las alegaciones de la demanda no son suficientes. En tal
virtud dejaremos abierta la cuestión para decidirla cuando
sea necesario. Sin embargo, dicho demandante tiene derecho
a los beneficios de la Ley Insular, definiendo las relaciones
entre patronos y empleados, y está sujeto a los términos de

dicha ley. (Véanse los Estatutos Revisados de Puerto Rico, Art. 322 y siguientes, páginas 162 y siguientes.)

Las alegaciones contenidas en la demanda, demuestran que la relación de amo y sirviente, o patrono y empleado, existía entre las partes, y se alega en dicha demanda, que el demandante, en el momento de ocurrir el accidente, procedía con el debido celo y diligencia; pero no se alega negligencia alguna por parte de la demandada que corresponda a alguna de las disposiciones de cualquiera de las tres subdivisiones del artículo 322 de la Ley Insular. Las subdivisiones dos y tres tratan de la negligencia por parte de los agentes del demandado. No se ha hecho en la demanda mención ni referencia a agente alguno; de modo que la subdivisión que debe aplicarse, es la marcada con el número uno (1). "Esta se refiere a defectos en el estado de vías de comunicación o en el de las obras o máquinas que se usen en relación con la empresa del patrono, o en ella misma." Declarando que la compuerta de una escotilla, por ser uno de los aparatos necesarios que se emplean en la empresa de la compañía demandada, está comprendida en la descripción hecha en la ley, bajo el nombre de maquinaria, debe observarse que la ley está ulteriormente limitada en sus términos, por las palabras que siguen a las anteriormente transcritas, a saber: "Y el daño fuera originado, o no descubierto, o no remediado, por la negligencia del patrono, o de cualquier persona," etc. Puesto que no existe alegación alguna por la que se pretenda exponer quién es la persona por cuya negligencia este estado o colocación defectuosa de los tablones de la compuerta de la escotilla "fué originado o no descubierto o no remediado" debe entenderse que la demanda por esta circunstancia deja de exponer un caso que esté comprendido "dentro de la Ley de Puerto Rico, relativa a la responsabilidad de los patronos."

La responsabilidad del demandante por los actos u omisiones de sus compañeros de trabajo, no surge necesariamente en el presente caso; y, según nuestro parecer con respecto a los hechos y la ley aplicable a los mismos, no es necesario se-

guir discutiendo por más tiempo este hilo de la cuestión. Todavía será tiempo determinar hasta qué punto la doctrina con respecto a compañeros de trabajo ha sido modificada por la Ley Insular relativa a la responsabilidad de los patronos, cuando se presente algún otro caso que directamente envuelva dicha cuestión.

Es indiscutible que era el deber de la compañía demandada procurar para su empleado o sea el demandante en el presente caso, un lugar seguro para su trabajo; y con tal que el demandante hubiera demostrado que no hubo falta por su parte en este asunto, podría quizás haber recobrado una indemnización por daños y perjuicios, siempre que hubiera hecho las alegaciones necesarias para que su caso hubiera estado comprendido en el referido estatuto. Pero, según su propia admisión, él conocía los defectos de la plataforma antes de ocurrir el accidente. El dice especialmente por conducto de su abogado, que él y sus camaradas o compañeros de trabajo, le llamaron la atención al piloto sobre el mal estado de los tablones que formaban la plataforma, y que dicho oficial le ordenó a la cuadrilla continuar el trabajo, alegando que los tablones estaban en buena condición, y diciendo *"Good, good, go ahead"* (bien, bien, continúen). Es verdad que el piloto mismo niega que se le había llamado la atención sobre el estado de la plataforma, pero el capataz de la cuadrilla apoya con su testimonio las declaraciones de los testigos del demandante. Sin embargo, después de haberle llamado la atención al piloto, sobre el estado peligroso de la escotilla, y de los tablones que formaban la plataforma cubriéndola; y después de su negativa o descuido de remediar dichos defectos, o de prometer hacerlo más tarde, el demandante y sus compañeros de trabajo continuaron el trabajo sin ulterior protesta, asumiendo al hacerlo así, el riesgo que corrían al trabajar sobre una plataforma defectuosa. Está bien establecido que aunque el empleado no está obligado a formar juicio con respecto al método del patrono de administrar su empresa, y tiene el derecho de asumir que se ejercerá un cuidado

razonable en procurar aparatos seguros tales como sean necesarios para administrar la empresa, sin embargo, esta regla está sujeta a la excepción de que cuando un defecto es conocido por el empleado y es tan evidente que él u otras personas puedan fácilmente verlo, no puede impunemente seguir usando el aparato defectuoso, a pesar de tal conocimiento y sin llamar la atención a su patrono sobre dicho defecto y hacer sus objeciones. Si el empleado lo hace así, asume el riesgo incidente a tal situación. En otras palabras, si él tiene conocimiento del defecto, y continúa al servicio de su patrono, sin llamarle a éste la atención sobre el mismo, o sin hacer objeción alguna contra dicho defecto, se entenderá que ha elegido continuar al servicio de su patrono a su propio riesgo, no obstante el defecto, y si ocurriese algún accidente debido al mismo, no podrá recobrar indemnización alguna por daños y perjuicios con motivo de tal accidente.

*Choctaw, etc. R. R. Co.,* v. *McDade,* 191 U. S., 64.

El Juez Sr. Van Devanter, que recientemente ha ocupado un asiento en la Corte Suprema de los Estados Unidos, mientras fué juez de circuito, se expresó en los siguientes términos, con respecto a un caso un tanto análogo al que nos ocupa:

"Pero se ha dicho que su intervención en el trabajo de colocar los estacones en el vagón, no fué voluntaria, porque lo hizo en cumplimiento de las órdenes de su jefe, o sea el conductor. La premisa es correcta, pero no le sigue la conclusión. Al interfecto le constaba que había peligro, y en ese sentido se encontraba en la misma situación que el conductor. Sin embargo, cumplió la orden de éste sin objeción, a pesar de que pudo optar por cumplirla o nó. La ley considera que tal acción es voluntaria. Es un principio bien establecido que cuando un empleado sabe y comprende que el trabajo que esté próximo a emprender, envuelve peligro, acepta el riesgo de ser herido, o será culpable de negligencia concurrente, según sea el caso, aun cuando emprenda el trabajo bajo la orden o dirección del representante del patrono."

*Chicago Great Western Ry. Co.* v. *Gretty,* 141 Fed., 913.

El apelante no puede eludir la fuerza de esta decisión

diciendo que le llamó la atención al piloto, sobre el estado
defectuoso de la plataforma que cubría la escotilla.  Esta
excusa pudiera haberle sido útil, si el piloto, al llamársele
la atención sobre el defecto, hubiera prometido remediarlo;
pero no hizo tal promesa, y, en efecto, se negó virtualmente
a remediar el defecto, o a prometer siquiera hacerlo, afir-
mando que no había peligro y que la plataforma estaba en
buen estado.  Y no habiendo tomado el piloto medida alguna
para reparar o evitar el defecto, ni prometido hacerlo, no
surge ninguna cuestión sobre si los oficiales del vapor tuvieron
o nó una oportunidad para hacer las reparaciones.  El deman-
dante tenía conocimiento del peligro y la demandada se negó
a remediar los defectos que se le habían indicado o a hacer
promesa alguna con respecto a los mismos, colocando de este
modo al empleado en la alternativa de negarse a continuar
trabajando en el sitio peligroso, según lo había encontrado,
o a asumir el riesgo de los defectos y peligros sobre los cua-
les había llamado la atención.  No hay nada en estos concep-
tos que, en nuestra opinión, sea contrario a las disposiciones
del artículo 8 de la Ley Insular relativa a la responsabilidad
de los patronos, con tal que dichas disposiciones sean inter-
pretadas justamente.  (Véanse Estat. Rev. de Puerto Rico,
Sección 329, p. 166.)

En un caso muy conocido, procedente del Tribunal de
Apelación del Distrito de Columbia, la Corte Suprema de
los Estados Unidos hace las siguientes observaciones:

"El demandante había tenido experiencia en la clase de trabajo
en que se encontraba ocupado, cuando sufrió su herida.  Comprendió
desde el principio el peligro que corría mientras trabajaba en la are-
naria.  No hubo garantía ninguna por parte del distrito, mediante
su supervisor, de responder de los daños que pudiera sufrir con ante-
rioridad al nombramiento de una persona que vigilara en la arenaria;
y no estaba convenido tácitamente en el contrato entre el demandante
y el distrito que podía exponerse a peligros temeraria o innecesaria-
mente.  Al contrario, si el distrito pudiera tener responsabilidad para
con él por motivo de la negligencia de sus oficiales o funcionarios, bajo

cuyas órdenes prestaba sus servicios el demandante, *éste tenía la obligación de proceder con el debido cuidado necesario* para protegerse de los daños personales que pudiera sufrir en el desempeño de su deber, del cual pudiera nacer dicha responsabilidad. Si dejó de proceder con el expresado cuidado; si se expuso a peligros tan amenazantes *o evidentes* que comprendió que de un momento a otro pudieran producirle daños, no obstante las promesas de la naturaleza alegada que la hiciera el supervisor del distrito, sería culpable, sin embargo, de negligencia concurrente que le privaría del derecho de recobrar daños por las heridas sufridas.''

*Dist. of Columbia* v. *McElligott*, 117 U. S., 621.

Por consiguiente, podemos repetir que toda vez que el demandante por su propia declaración demuestra que tenía conocimiento de los defectos que existían en la escotilla y en la plataforma que la cubría y de los consiguientes peligros, por los cuales estaba rodeado, y continuaba trabajando en el sitio inseguro sin que se adoptara medida alguna o hiciera ninguna promesa por parte del patrono, de remediar el defecto, el demandante asumió así el riesgo de cualquier peligro que pudiera acecharle en su camino; y al ocurrir el accidente, no tenía en tales circunstancias derecho alguno para reclamar ninguna obligación por parte de la compañía demandada de indemnizarle por los daños que puede haber sufrido. Así es que con tal que las alegaciones contenidas en la demanda no hubiesen permitido aplicar las disposiciones de la Ley Insular, que regulan las relaciones entre patronos y empleados, el demandante no podría recobrar una idemnización por daños y perjuicios en virtud de dicha ley.

Siendo éste nuestro parecer con respecto a las cuestiones de que se trata, no es necesario examinar los otros aspectos del caso. Ninguno de los errores señalados por el apelante, puede serle útil, por no estar sostenidas por los autos. Siendo éste el caso, debe confirmarse la sentencia dictada por el tribunal inferior.

*Confirmada.*

Jueces concurrentes: Sres. Presidente Hernández y Asociados Wolf, del Toro y Aldrey.

### DICTAMEN SEPARADO EMITIDO POR EL JUEZ SR. MACLEARY.

El dictamen emitido en el presente caso, en el día de ayer, era el dictamen oficial de esta corte, o sea el dictamen con que todos los miembros del tribunal estaban de acuerdo; y aunque dicha opinión fué escrita por mí, en un solo punto, no tiene mi cordial aprobación. No hay vacilación alguna entre los jueces de la corte, con respecto a la cuestión de la confirmación de la sentencia del tribunal inferior; pues todos están de acuerdo con nuestra sentencia, dictada en tal sentido. Pero, algunos de nosotros, o por lo menos yo, no estamos conformes con el párrafo que dice: "Cualquiera que sea el efecto que esta decisión pueda tener con respecto a la validez del estatuto federal en los territorios de los Estados Unidos, no es necesario decidir en este caso tal cuestión en cuanto a Puerto Rico concierne, ya que las alegaciones de la demanda no son suficientes. En tal virtud, dejaremos abierta la cuestión para decidirla cuando sea necesario." La cuestión de si los Estatutos Federales son aplicables a su caso, tal como éste ha sido presentado aquí, fué claramente planteada por el apelante, en su alegato. Con respecto a ese punto, digimos en el dictamen emitido ayer: "Esta afirmación era probablemente un concepto formado posteriormente, puesto que de los autos no aparece que esta cuestión fuera planteada ante la corte inferior. Pero, esto no importa; se puede presentarla ahora ante este tribunal. El abogado de la compañía demandada, en su argumentación final ante esta Corte Suprema, admite francamente que la citada ley del Congreso, es la verdadera ley; y que, siempre que en una demanda se consignen los hechos necesarios para la aplicación de dicha ley, en un caso entre empleados y patronos, ante las cortes de esta Isla, desde ese momento es aplicable exclusivamente, sin que sea necesario mencionar

especialmente dicha ley en las alegaciones.'' Esta cuestión había sido objeto de la consideración del tribunal desde la fecha de la presentación del alegato del apelante en el presente caso, o sea desde el 15 de octubre de 1910. Después de la primera vista, que se celebró el día 17 de enero último, creímos que dicha cuestión y algunas otras, eran de suficiente importancia para ordenar una nueva vista, con motivo de varias preguntas sometidas a los abogados, para su discusión. Dicha orden es como sigue:

''Atendida la importancia de las cuestiones legales envueltas en la resolución de este caso, es ordenado que el mismo sea señalado para nueva argumentación escrita y oral, sobre los siguientes puntos:

''1° ¿Son aplicables a los hechos de este caso, los estatutos sobre responsabilidad de patronos, aprobados por el Congreso y la Legislatura Insular? y en caso afirmativo, ¿en qué sentido son aplicables?

''2°. ¿Aparece de los hechos de este caso, que el empleado asumió los peligros propios de su empleo?

''3°. ¿Qué obligaciones tenía el patrono en este caso, con relación a proporcionar a su empleado un sitio seguro, en que trabajar?

''4°. ¿Qué otras cuestiones pertinentes hay envueltas en la resolución de este caso?

''Para la celebración de la nueva vista de este caso ante el Tribunal Pleno, se señala el día tres de abril próximo, a las dos de la tarde.''

Esta nueva vista se celebró el día 3 del pasado mes de abril, y se admitió la constitucionalidad, fuerza y vigor de dicho estatuto. Y sólo después de haberse estado considerando la referida cuestión, durante más de veinte y ocho semanas, es que se sugirió una duda con respecto a ese asunto. Esas dudas fueron alegadas con tal persistencia, que para llegar a una decisión en dicho caso, era finalmente necesario, modificar la opinión. Yo, por mi parte, nunca dudé, por un solo momento, de que los distinguidos letrados que represen-

taban las dos partes en el presente caso, y quienes admitieron la validez de las citadas leyes, y su aplicabilidad en Puerto Rico, tenían razón en cuanto a las conclusiones a que habían llegado después de meses de estudio, y después de dos vistas celebradas antes este tribunal, con un intervalo de setenta y seis días entre las mismas.

En mi opinión, era claramente el deber de este tribunal, resolver dicha cuestión de un modo u otro; especialmente cuando el derecho del apelante, de interponer recurso de apelación para ante la Corte Suprema de los Estados Unidos dependía de nuestra resolución con respecto a ese punto. Sección 35 de la Ley Orgánica. Además, es de interés general para la Isla, que las leyes aquí vigentes, sean precisas y determinadas; y no debe dejarse en duda la cuestión de si un Estatuto Federal está o nó vigente en nuestro pueblo. Los tribunales de la Isla, y menos que ninguno, el Tribunal Supremo, jamás deben dar lugar a que surjan dudas con respecto a las leyes que han de regir en nuestro pueblo, y por las que se determinan sus derechos y sus obligaciones. Ni la Corte Suprema de los Estados Unidos, ni los abogados que postulan ante la misma, ni el foro de Puerto Rico, parecen haber tenido duda alguna sobre dicha cuestión. Siendo así ¿por qué hemos nosotros de hacer surgir una duda y luego dejar de resolverla? ¿Es esto sabio o patriótico? Yo creo que nó. Creyendo, por consiguiente, que era claramente el deber de este tribunal, declarar si los Estatutos Federales con respecto a la responsabilidad de patronos, para con sus empleados, estaban o nó vigentes en Puerto Rico, incluí originalmente tres párrafos en el dictamen del Tribunal, que dicen lo siguiente:

"Con arreglo a esta decisión, debemos declarar que dicha Ley Federal, que regula las relaciones entre ciertos patronos y sus empleados, está vigente en Puerto Rico, lo mismo que en otros territorios de los Estados Unidos."

Después de haberse declarado que esta primera ley era, a lo menos, hasta cierto punto, anticonstitucional, el Con-

greso de los Estados Unidos aprobó una nueva ley sobre la misma materia, en 22 de abril de 1908. (Véanse Statutes at Large of the United States, chapter 149.) Esta ley reemplazó la anterior, a lo menos con respecto a conductores públicos que lo eran mediante ferrocarriles; y toda vez que versa sobre la misma materia, y abarca toda la cuestión, deroga implícitamente la ley primeramente mencionada en todo aquello en que las dos sean contradictorias o incompatibles, pero en nada más. (*Tracy* v. *Tuffly,* 134 U. S., 223; *U. S.* v. *Tyner,* 11 Wall, 88 y 95; *Cook Co. Nat. Bk.* v. *U. S.,* 107 U. S., 445; *Norris* v. *Crocker,* 13 How., 429; *Bartlet* v. *King,* 12 Mass., 537; *Com.* v. *Cooley,* 10 Pick, 36, 27 Mass; *Com.* v. *Kimbal,* 21 Pick, 376; 38 Mass; *Pierpont* v. *Crouch,* 10 Cal., 315; *Sutherland Stat. Cons.,* pp. 207 and 208; *Guerra* v. *P. R. R.,* resuelto por la Corte Suprema de Puerto Rico en 7 de abril de 1905; véase Fed. St. Ann. p. 584, nota en p. 586.)

La última ley, según lo demuestra su título, se refiere únicamente a conductores públicos que lo son mediante ferrocarriles. Este hecho la hace inaplicable al presente caso, y el demandante en este pleito, no puede reclamar los beneficios de dicha ley. Toda vez que la ley primeramente mencionada, con arreglo a sus términos, es aplicable a conductores públicos y sus empleados y limitada en su aplicación a dichos conductores y empleados es necesario que se haga en la demanda la alegación de que la compañía demandada es un conductor público. No aparece en la demanda tal alegación, y no existe en los autos nada que demuestre que la compañía demandada sea tal conductor público. No podemos apartarnos de los autos, en busca de informes de esta índole. La compañía demandada puede ser un conductor público o un conductor privado, y en la demanda deben exponerse los hechos necesarios para lograr que el caso esté comprendido dentro de la esfera de acción de la Ley Federal, si el demandante desea invocar la protección de la misma.

Según parece, estas observaciones fueron aprobadas por

el tribunal; pero antes de firmarse definitivamente la senten-
cia, resultó que surgieron dudas entre algunos de mis com-
pañeros, y se suprimieron dichos párrafos.

Según yo pude comprender el supuesto origen de dichas
dudas, éstas nacieron de la creencia de que los referidos esta-
tutos quizás fuesen localmente inaplicables en Puerto Rico.
No acierto a encontrar en los mismos estatutos, cosa alguna
que indique que ese era el parecer del Congreso, cuando di-
chos estatutos fueron aprobados. Ni encuentro, tampoco, en
las Decisiones del Tribunal Supremo, nada que justifique la
opinión de que la idea predominante en aquel augusto tri-
bunal, haya sido de que Puerto Rico estaba excluído de la
protección de aquellos estatutos. Examinemos las autori-
dades.

Según la decisión dictada por la Corte Suprema de los
Estados Unidos, la ley de 1906, sobre responsabilidad de
patronos, era claramente aplicable a los Territorios, y cons-
titucional en lo que a ellos hacía referencia. (Los casos sobre
responsabilidad de patronos, 207 U. S., 463-541; *El Paso &
N. R. Co.* v. *Gutiérrez,* 215 U. S., 87.)

En igual sentido se expresa, en su brillante opinión, el
Señor Shepard, Juez Presidente del Tribunal de Apelación
del Distrito de Columbia, en el caso de *Hyde* v. *Southern Ry.*
Co., 31 App. D. C., 466.

Entonces, ¿por qué no está dicha ley en vigor en Puerto
Rico? Se sugiere que es o puede ser "localmente inapli-
cable." Con arreglo el artículo 14 de la Ley Orgánica, todas
las leyes del Congreso que no son localmente "inaplicables,"
se consideran que "tienen la misma fuerza y efecto en Puerto
Rico, que en los Estados Unidos." ¿Qué es lo que hay en
la esencia de esta ley, que la haga "localmente inaplicable"?
En vano se ha hecho un exámen minucioso de todas las sec-
ciones de la misma, en busca de alguna razón por la que sea
"localmente inaplicable"; habiendo resultado también infruc-
tuosa la investigación que hemos hecho de todas las deci-
siones de este tribunal, y de las de todas las Cortes Fede-

rales, con el fin de averiguar si algún juez ha sustentado o apoyado tal teoría.

En época tan remota como el año 1879, el Tribunal Supremo de los Estados Unidos ·fijó la facultad del Congreso para legislar para los Territorios. Dicho Tribunal por conducto de su Juez Presidente, Hon. M. R. Waite, se expresó en los términos siguientes:

"Todo territorio comprendido en la jurisdicción de los Estados Unidos, y que no forme parte de ningún Estado, debe necesariamente regirse por o de acuerdo con la autoridad del Congreso. Los territorios no son sino subdivisiones políticas del dominio ·de los Estados Unidos, no comprendido dentro de su propio territorio. La relación de éstos con el gobierno general, es muy semejante a la que existe entre los condados y sus respectivos Estados, pudiendo el Congreso legislar para ellos en igual forma que lo hacen los Estados para sus organizaciones municipales. La Ley Orgánica de un Territorio equivale a una constitución, como ley fundamental del gobierno local. Es obligatoria y obliga a las autoridades territoriales; pero el Congreso es supremo, y para los fines de este ramo de su autoridad gubernamental, tiene todas las facultades del Pueblo de los Estados Unidos, excepto aquellas que expresa o tácitamente hayan sido reservadas en las cláusulas prohibitorias de la Constitución. En la Ley Orgánica de Dakota, no existía ninguna reserva  expresa referente al poder del Congreso, para hacer enmiendas a las leyes de la Legislatura del Territorio, ni era necesario que existiera. Esa facultad es un atributo de la soberanía, y continúa hasta que sea quitada. No solamente puede el Congreso derogar leyes de la Legislatura de un Territorio, sino que también puede legislar expresamente para el gobierno local. Tiene facultad para restablecer y poner en vigor una ley de la Legislatura del Territorio, que sea nula, y, asimismo, para anular una ley que esté en vigor. En otras palabras, el Congreso tiene plena y completa autoridad legislativa sobre los habitantes de los Territorios, y todos los departamentos de los gobiernos territoriales. Puede hacer con respecto a los Territorios, lo que, según la Constitución de los Estados Unidos el pueblo puede hacer para los Estados."

*National Bank* v. *County* of *Yankton*, 133 U. S. Rep., 101.

Pero se sugiere, o puede sugerirse, que Puerto Rico no es un "Territorio" de los Estados Unidos, dentro del al-

cance de la Ley sobre Responsabilidad de Patronos. ¿Por qué no? Al discutirse en el caso de la Iglesia Católica Romana, la aplicabilidad de la Ley de 30 de julio, 1886, que puso en vigor ciertas prohibiciones contra ''las Legislaturas de los Territorios,'' se declaró que la ley era inaplicable, no porque Puerto Rico no estuviera comprendido en la palabra ''Territorios,'' sino porque aquella ley había sido derogada por la disposición especial de la Ley Foraker, expresándose el Juez Presidente Fuller, a nombre del tribunal, con respecto a este asunto, en los siguientes términos:

''Pero, tales prohibiciones generales no son de aplicación en los casos en que se concede un permiso especial, en sentido contrario, por la Ley Orgánica de los Territorios en cuestión.''

Continúa más adelante en la opinión, el Juez Presidente, diciendo:

''La Ley de Puerto Rico que estamos considerando, meramente es una repetición del procedimiento seguido por el Congreso en el pasado, *al organizar otros Territorios.*''

*Ponce* v. *Roman Catholic Church,* 210 U. S., 296, 307, 308. Esta opinión fué emitida en el año 1907, y en ella evidentemente se considera a Puerto Rico como un Territorio de los Estados Unidos, al que debe aplicarse la legislación general del Congreso.

Y al año siguiente el mismo eminente jurista, al hablar a nombre del mismo alto Tribunal, sostiene el mismo princípio jurídico en un caso bien conocido, en el que la cuestión que se discutía, era la aplicación de un estatuto que se había aprobado mucho antes de la guerra con España, y que disponía que podían reclamarse los prófugos de la justicia ''a la autoridad ejecutiva de cualquier Estado o Territorio a donde hubieran huído dichos prófugos, etc.'' Al terminar su opinión en dicho caso, el Juez Presidente dijo:

"Puede afirmarse justamente que Puerto Rico es un Territorio completamente organizado, aunque no es un Territorio incorporado a los Estados Unidos."

*State, ex rel. Kopel* v. *Bingham,* 211 U. S., 468, 476.

Y en una parte anterior de la misma opinión, la corte adopta como definición de la palabra "Territorio," según dicha palabra se usa en la legislación del Congreso, la siguiente:

"Una parte del país, que no está comprendido en los límites de ningún Estado, y no admitida aún, como Estado, en la Unión, pero organizada de acuerdo con las leyes del Congreso, con una Legislatura separada, bajo un gobernador territorial, y otros funcionarios nombrados por el Presidente y el Senado de los Estados Unidos."

*Kopel* v. *Bingham,* 211 U. S., 475.

Esta definición se ha aplicado a esta Isla, y si se hizo correctamente, entonces Puerto Rico es uno de los Territorios a los que se quiso hacer extensiva la ley de 1896, sobre responsabilidad de patronos. Si la primera ley es de aplicación a Puerto Rico, entonces también lo es la segunda; puesto que ella es simplemente una ley enmendando la anterior, y se refiere solamente a conductores públicos que lo sean *por ferrocarril.* Con respecto a este particular, no puede existir por más tiempo ninguna duda en la mente más vacilante.

Es de esperarse que este tribunal aproveche la primera oportunidad para resolver cualesquiera dudas e incertidumbres que la vacilación demostrada en el dictamen emitido en el día de ayer, pueda hacer surgir en la mente de los miembros del foro, y de otras personas interesadas en esta cuestión; y que nosotros aceptemos las responsabilidades colocadas sobre nuestros hombros, por las leyes de nuestro país y desempeñemos todos nuestros deberes para con el país y sus habitantes, sin más demora ni vacilaciones.