### BARNES v. HONEY GROVE NATATORIUM CO. et al. (No. 2366.)

(Court of Civil Appeals of Texas. Texarkana. March 2, 1921. Rehearing Denied March 10, 1921.)

**1. Theaters and shows ⬅═◊6—Evidence held to show contributory negligence of swimmer drowned in pool.**

In an action for damages for the drowning of plaintiff's son in defendants' swimming pool, evidence as to the son's knowledge of conditions, including depth of water and of his own cramping, *held* sufficient to warrant the jury's verdict that he was guilty of contributory negligence.

**2. Theaters and shows ⬅═◊6—Evidence held admissible on issue of contributory negligence of drowned swimmer.**

In a suit for damages for the drowning of plaintiff's minor son in defendants' swimming

◊═◖For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

pool, evidence as to the depth of the water, condition of the pool, and as to decedent's previous· cramping *held* competent, relevant, and material on the issue of contributory negligence.

**3. Theaters and shows ⬡⇒6—Gross negligence on part of swimming pool owners held not shown.**

In a suit for damages for the drowning of plaintiff's minor son in defendants' swimming pool, evidence showing that defendants had exercised some care for the safety of persons using the pool *held* to preclude a finding that defendants were guilty of gross negligence.

**4. Negligence ⬡⇒97—Comparative negligence doctrine not recognized.**

The doctrine of comparative negligence is not recognized in this state.

Appeal from District Court, Finnin County; Ben H. Denton, Judge.

Suit by N. J. Barnes against the Honey Grove Natatorium Company and others. From a judgment for defendants, plaintiff appeals. Affirmed.

This was a suit by appellant for damages, actual and exemplary, for the death of his son Clarence on August 21, 1919, by drowning in a swimming pool in Honey Grove then owned and operated for profit·by the 50 or more individuals named as defendants and other individuals not so named, and afterwards owned and operated by the Honey Grove Natatorium Company, a corporation.

In his petition appellant alleged:

That his son was only 16 years old and was an inexperienced swimmer, and that his death was due to negligence on the part of the defendants, in that the pool as constructed was a dangerous place when they invited Clarence and the public generally to patronize it, and in that they did not warn him of the danger he incurred in using it and failed "to provide," quoting, "suitable safeguards, notices, markers, and warning signs indicating the depth of the water and the dangerous places in and about said natatorium and swimming pool, and to provide life lines appropriate and suitable for the purpose to aid and protect the patrons from danger of drowning, and to provide and keep on duty a reasonably sufficient number of competent attendants to look after, guard, and protect the patrons against danger and accident while in and about said natatorium and swimming pool, and to rescue and save them when in apparent danger, and to search for, recover, care for, and resuscitate them should they go down or be in ·the act of drowning, and to provide the necessary and suitable instruments and appliances for resuscitation of such patrons as might go down and be drowned and before life was extinct."

In answer to special issues submitted · to them the jury found: (1) That the defendants, not including the natatorium company, were guilty of negligence as charged against them in the petition; (2) that their negli-gence was the proximate cause of ·the death of appellant's son; (3) that appellant's son was guilty of contributory negligence; (4) that ,appellant was damaged by the death of his son in the sum of $1,330.

On said findings the court below rendered judgment that appellant take nothing by his suit, whereupon he prosecuted this appeal.

It appeared from testimony that the pool was made of concrete throughout, and that it was 50 feet wide by 100 feet long. The floor or bottom thereof was so constructed as to slope gradually from its south end to a point 8 or 10 feet from its north end, so that while the water at the south end was only about 18 inches deep, it became gradually deeper until it reached said point 8 or 10 feet from the north end, where it was about 9 feet deep. In the middle of the pool—that is, about 50 feet from each end thereof—the water was about 5 feet deep. An iron rod intended for use by persons in· the pool who wished to use it to hold on to was attached to the walls thereof just about the water along the entire north end of the pool and along the sides thereof for a distance of about 40 feet from said north end. A rope or chain was stretched across the pool at about the height of the water at a point where the water was about 2 feet deep, 20 or 25 feet from the south end of the pool, and another rope or chain was stretched across the pool at a point where the water was about 3½ feet deep, 40 or 50 feet from said south end. The floor or bottom of the pool could be seen through the water all along for a distance of about 25 feet from the south end. One E. D. Yeager was employed by the defendants as manager to take charge of and operate the pool, and as such was authorized to employ assistants, and did employ several boys to assist him, but, it seems, did not employ any one and charge him with the duty specifically of looking after the safety of persons in the water. Appellant's son was 16 years of age. He and 18 or more other persons were in the pool on the occasion when he was drowned. The witness Max Eversole, a boy about 17 years of age, testified that he talked with appellant's son Clarence about half an hour after Clarence went into the pool. Clarence was then on the bank of the pool at a point about halfway from the ends thereof. "He was talking," the witness said, "about kind of cramping, and he didn't know whether he could swim very good and was trying to learn. I told him he ought to get out on the bank and put' on his coat, or something like that, and sit around awhile until he felt like he did not have the cramps any more." A witness who saw the body of Clarence when ·it was taken from the pool testified: "He looked like he had cramped or something like that."

There was no testimony showing that appellant's son possessed greater or less intelligence than the average boy of his age.

J. W. Gross, and Thos. P. Steger, both of Bonham, and B. B. Sturgeon, of Paris, for appellant.

Baldwin & Rather, of Honey Grove, and Cunningham, McMahon & Lipscomb, of Bonham, for appellees.

WILLSON, C. J. (after stating the facts as above). [1, 2] As we view the record, the contention made that the finding of the jury that appellant's son was guilty of contributory negligence was without the support of testimony should be overruled. Testimony referred to in the statement above was all there was which can be said to have tended to show contributory negligence on the part of appellant's son. The trial court instructed the jury that negligence was a failure to use "ordinary care," and that ordinary care meant such care "as an ordinarily careful and prudent person would commonly exercise under the same or similar circumstances." He then told them that whether appellant's son was guilty of contributory negligence or not depended on whether he did or omitted to do something which amounted to negligence which, concurring with negligence on the part of the defendants was a proximate cause of his death. It will be noted the instructions were without reference to the age of the boy, but were such as were applicable to an adult. No complaint on that ground, however, is made of them on this appeal. Treating the case as one in which the ordinary rule with reference to contributory negligence was applicable, it is plain, we think, that the jury were warranted in finding that appellant's son was guilty of such negligence. They had a right to conclude that the boy discovered during the half hour he was in the pool before he had the conversation with the witness Eversole that the water therein became gradually deeper from the south end to the north end of the pool, and knew and realized the danger to a person who was not a good swimmer using it, and of the danger even to an expert swimmer using it after he discovered he was cramping, and to conclude that an ordinarily prudent person under those circumstances would not have gone back into the pool as the boy did after he had the conversation with the witness Eversole referred to in said statement. In this connection we will say that we think the contention made that the court erred in admitting the testimony of said Eversole referred to in said statement is without merit. The objection to the testimony was that it was "incompetent, irrelevant, and immaterial." Clearly it was competent, relevant, and material on the issue as to whether appellant's son exercised the care an ordinarily prudent person would have used under the circumstances of the case.

[3, 4] It will be seen by reference to testimony referred to in the statement above that it appeared defendants had exercised some care for the safety of persons who used the pool. Therefore we do not think a finding that the defendants were guilty of "gross" negligence would have been warranted. But, if we thought otherwise, and the jury, on an issue submitted to them, had found them to be guilty of such negligence, it would not be a reason why the judgment should be set aside. The doctrine of comparative negligence is recognized in some jurisdictions. But it is not recognized as law in this state. The holding of the Court of Civil Appeals, to the contrary in McDonald v. Railway Co., 21 S. W. 774, cited by appellant, was repudiated by the Supreme Court when that case was before it on a writ of error (86 Tex. 1, 22 S. W. 939, 40 Am. St. Rep. 803), and has since been repeatedly repudiated by the courts of this state. Railway Co. v. Mills, 49 Tex. Civ. App. 349, 108 S. W. 480; Railway Co. v. Kuehn, 11 Tex. Civ. App. 21, 31 S. W. 322; Wilcox v. Railway Co., 11 Tex. Civ. App. 487, 33 S. W. 379; Turner v. Railway Co., 30 S. W. 253; Railway Co. v. Eason, 35 S. W. 208; Railway Co. v. Rodgers, 89 Tex. 675, 36 S. W. 243; Railway Co. v. Christian, 8 Tex. Civ. App. 246, 27 S. W. 932.

Assignments presenting other questions are overruled. If the trial court erred in the respects complained of in those assignments, the errors were harmless when considered with reference to the rulings made on the contentions we have discussed.

The judgment is affirmed.