**Dorothy Walters PEEK, Appellant,**

v.

**Sam KELLY, Consumer Credit Commissioner, State of Texas, Appellee.**

**No. 12768.**

Court of Civil Appeals of Texas, Austin.

July 26, 1978.

Rehearing Denied Aug. 31, 1978.

Earl Rutledge, Fort Worth, for appellant.

John L. Hill, Atty. Gen., Catherine Brown, Asst. Atty. Gen., Austin, for appellee.

PHILLIPS, Chief Justice.

Appellant has appealed from a judgment of the trial court denying her application to do business as a pawnbroker. The trial court had granted the State's motion for a summary judgment in the matter.

We affirm this judgment.

In 1975 appellant filed her application for a license to engage in business as a pawnbroker with the Consumer Credit Commissioner of this state. Such license is required by the provisions of Article 5069–51.-03, V.T.C.S. Pursuant to a hearing held by the Commissioner, her application was denied. The Commissioner determined that appellant had executed approximately 2900 "buy and sell" contracts during a period of time from May 10, 1973 until March 25, 1975. The Commissioner found such contracts to be pawn transactions and that appellant had acted unlawfully as a "pawnbroker" within the meaning of Article 5069–51.02 of the Texas Pawnshop Act. The Commissioner found that the appellant's repeated violations of the Act demonstrated that she lacked such character as would warrant the belief that she would operate a pawnshop lawfully and fairly within the purposes of the Act. It was on this basis that he denied the application.

Appellant's husband, Russell L. Peek, had engaged in business as a pawnbroker from 1955 until the Commissioner revoked his license on May 10, 1973. From 1955 appellant had participated on either a full or part-time basis with her husband in operating the East Gate Loan Company.

Subsequent to the May 10, 1973 license revocation, the Peeks continued to transact business at the same address using the name "East Gate Loan Company" on a publicly displayed sign while displaying a window sign reading "Pawn Shop."

During the period from May 10, 1973 to March 25, 1975, appellant participated in the business of the East Gate Loan Company. During this time some 5800 thirty-day buy-sell contracts, described later in this opinion, were executed and appellant admits that she had knowledge of or participated in 2900 of these contracts. Not until appellant's husband had been enjoined by the Commissioner from engaging in the business of pawnbroker without first obtaining a license as prescribed by law, and later, an order of commitment for contempt against her husband for violation of the injunction had been obtained by the Commissioner, did appellant finally cease to participate in the pawn business. Shortly thereafter, appellant made application for her own license which was denied as described above.

Appellant is before us on several points of error which, in effect, complain of the action of the trial court in granting summary judgment when there were material issues of fact to be ascertained as to whether or not appellant was engaged in pawn transactions without a license or whether or not appellant demonstrated such character and general fitness to warrant belief that she would operate a pawnshop business lawfully and fairly within the purpose of the Texas Pawnshop Act. We overrule these points.

In granting the summary judgment, the trial court found as a matter of law that appellant had engaged in at least 2900 pawn transactions without benefit of a license to engage in business as a pawnbroker between May 10, 1973, and March 25, 1975; that she was not denied due process of law in the denial of her application for a license; and that she did not demonstrate such character and general fitness as to warrant the belief that she would operate a pawnshop lawfully and fairly within the purpose of the Texas Pawnshop Act.

The threshold question here is whether appellant was engaged in the pawnshop business. We hold that she was. " 'Pawnbroker'—means any person engaged in the business of lending money on the security of pledged goods; or engaged in the business of purchasing tangible personal property on condition that it may be redeemed or repurchased by the seller for a fixed price within a fixed period of time." (Article 5069–51.02(b), V.T.C.S.)

" 'Pledged goods'—means tangible personal property other than choses in action, securities, or printed evidence of indebtedness, which property is deposited with or otherwise actually delivered into the possession of a pawnbroker in the course of his business in connection with a pawn transaction." (Article 5069–51.-02(c), V.T.C.S.)

Appellant and her husband entered into what were called "buy-sell" contracts where persons pledged tangible personal property for money consideration on condition that it could be repurchased at a fixed price within a fixed period of time. The amounts charged for the transaction and the time period provided under the contracts were identical to those used by the East Gate Loan Company in its pawn transactions prior to May 10, 1973. This "buy-sell" contract was identical to the contract used in pawn transactions, except for the title, which was changed to "30-day buy-sell contract."

In her oral deposition, appellant admits to making loans on the security of pledged goods after the East Gate Loan Company license was revoked, to charging interest on transactions entered into after May 10, 1973, as on those executed prior to that date, when the East Gate Loan Company had a valid pawnbroker's license. On the basis of the undisputed facts regarding the nature of the thirty-day buy-sell contracts, the Consumer Credit Commissioner and the trial court correctly found those contracts to be pawn transactions for which a pawnbroker's license is required by Article 5069–51.03, V.T.C.S.

■ We also hold that the court was correct in holding, as a matter of law, that appellant did not demonstrate such character and general fitness as to warrant the belief that she would operate a pawnshop lawfully and fairly within the purposes of the Texas Pawnshop Act.

Standards for issuance a denial of a license to do business as a pawnbroker are set out in Article 5069–51.05 of the Texas Pawnshop Act:

"(a) On filing of such application, bond, proof of insurance, and payment of the annual license fee and an investigation fee of Two Hundred Dollars, the Commissioner shall investigate the facts and if he finds the financial responsibility, experience, character and general fitness of the applicant are such as to warrant the belief that the business will be operated lawfully and fairly, within the purposes of this Act, he shall grant such application and issue to the applicant a license which will evidence his authority to do business under the provisions of this Act."

Based upon the facts evidenced by the pleadings, admissions and answers to interrogatories, depositions and affidavits on file, the trial court found, as a matter of law, that appellant does not have such character as would warrant the belief that she would operate a pawnshop lawfully and fairly within the purposes of the Act.

The uncontradicted testimony discloses, and the trial court so found, that appellant engaged in at least 2900 pawn transactions without benefit of a license to engage in business as a pawnbroker between May 10, 1973, and March 25, 1975. This evidence clearly demonstrates, as a matter of law, upon which reasonable minds could not differ, that she does not have such character as would warrant the belief that she would operate a pawn business lawfully and fairly within the purposes of the Act. See *Pinkston v. Board of Insurance Commissioners of Texas*, 165 S.W.2d 526 (Tex.Civ.App. 1942, no writ).

■ Summary judgment is proper if the pleadings, depositions, affidavits, and admissions on file with the court disclose that there is no genuine issue as to any material fact. *Parrott v. Garcia*, 436 S.W.2d 897 (Tex. 1969).

The judgment of the trial court is affirmed.

Affirmed.